DAVID G. RANSOM v. J. T. ALEXANDER.

Where a party deposited a promissory note with a bailee, without any instructions to collect it, and the bailee afterwards received from the maker payment in the treasury notes of the Confederate States, it did not discharge the maker.

Admitting that the bailee was an agent, he was only authorized to receive payment in lawful currency; no other payment will bind the principal.

The Confederate notes were an illegal and treasonable currency, and the attempted payment in such was known to the debtor to be an illegal act.

The defendant received the notes after his return in 1866. He remarked to his agent that he would have no difference with him; but that if the defendant did not make it right, as the bailee had told him he must do, he should always think he ought. This is no acquiescence. An acquiescence, where there was no consideration for it, would have to be very affirmatively proved.

No compliance with a law, rule, or act, designed to aid in the establishment of the independence of the Confederate States, can furnish any defense against a lawful demand.

ERROR from Ellis. The case was tried before Hon. JOHN J. GOOD, one of the district judges.

In July, 1861, D. G. Ransom executed his note to J. T. Alexander, for $1,553 80. Afterwards, in April, 1862, being about to leave Texas to go to the other side of the Mississippi river, to be absent an indefinite length of time, Alexander placed this note, together with others on men in Ellis county, all due, in the hands of B. F. Hawkins,

saying to him at the time he was about leaving the country, and wished to leave these notes with him, or words to thát effect, but giving no directions, recollected by Hawkins, about collecting or not collecting the money on the notes, nor about the payment of taxes. . Hawkins gave a memorandum receipt for the notes, but this only showed that the notes were his in hands.

In the fall of 1863 the bailee, after talking with the maker, listed the note for taxation, writing on it that Confederate money would be taken. Ransom paid his note to Hawkins in Confederate money, and took it up. But the bailee said he had no authority, and if A. should not be satisfied the debtor must make it all right. Alexander was not heard from at all from 1862, when he left the country, until the spring of 1866, when he returned. He then called on Hawkins to see about the notes. Hawkins had collected all the notes; the one on Ransom and one on W. W. Parks in Confederate money, and one on E. W. Rodgers .in state treasury warrants.

The state money and part of the Confederate money he had paid out for taxes, and the balance was still on hand. This he delivered to Alexander and took up his receipt. Alexander expressed himself satisfied with Hawkins and his action in the premises, but said, "if Ransom did not make further settlement with him, he should always think he aught to," or words to that effect. After this Alexander called on Ransom, tendered him the Confederate money, and demanded payment, which being refused, he brought this suit.

The defense set up was the payment to Hawkins as agent. Under this plea, in addition to the facts above, the defendant below proved, in effect, that Hawkins listed the note for taxation, in 1863, under a law of the Confederate congress, as receivable in Confederate money; that he paid the tax in the same way; that he received like currency on the other notes, to which no objection has ever been made by

Alexander; that he had no funds of Alexander's to pay taxes with; that he was compelled to list the notes and pay the tax on them either as specie notes or as notes receivable in Confederate money; that he had no instructions from Alexander on the subject, and could not hear from him, and under the circumstances acted as he did in his own affairs. The existence of the war, the common use of Confederate money, the revenue laws, and other facts and circumstances were proved, all which may be seen in the statement of facts.

*A. A. Kemble*, for plaintiff in error, made many points upon the admissibility of evidence and questions of practice not noticed in the opinion, because the court thought the plea of payment to the agent (who had no authority to receive in anything but lawful currency) was not admissible.

*A. Bradshaw*, for defendant in error.

CALDWELL, J.—This was a suit founded on a copy of a promissory note, the original alleged to be in the possession of plaintiff in error.

Judgment in the court below for principal and interest in favor of defendant in error.

We learn from the statement of facts that in April, 1862, Alexander, defendant in error, called on B. F. Hawkins, and stated to him that he was about leaving, to be absent for an indefinite length of time. He asked and obtained permission to deposit with Hawkins the note sued on. No instructions were given, and, so far as the record discloses, Hawkins was a mere bailee.

In a short time thereafter Alexander left the country, and did not return until the spring of 1866. During his absence no communication passed between them.

In the year 1863 Hawkins listed the note for taxation, under a law of the Confederate States, and at the same time indorsed thereon his willingness to receive Confed-

erate money therefor. This indorsement was done, it is alleged, to avoid the payment of a specie tax or its equivalent in Confederate money, levied by the Confederate government on choses in action.

This indorsement soon came to the ears of Ransom. He tendered the Confederate money, which was reluctantly received by Hawkins, and the note delivered up. Ransom was distinctly informed by Hawkins at the time "that he was acting without instructions," and that, if his principal was not satisfied, Ransom must "make it right" on his return. To this no remembered reply was given.

Alexander returned in the spring of 1866, and was put in possession of the foregoing, and the "Confederate money" handed to him by Hawkins, which was received.

Alexander remarked, "I will have no controversy with you, (meaning his agent Hawkins,) but if Ransom does not make it right, I shall always think he ought to."

Two questions arise on this state of facts.

I. Was the payment to Hawkins such a one as to discharge the payee, and bring it within the rule of an executed contract, which this court will not disturb, as laid down in [McCartney v. Greenway, 30 Tex., 754] Austin term, 1867? And, if not,

II. Was there a ratification subsequently by Alexander?

Admitting that Hawkins was an agent, he must be held to the strict discharge of his duties as such. It is recognized as a correct principle of law, that a person in the possession of negotiable paper has an implied power to collect it; but as an agent he is not authorized to receive any other than lawful currency. To bind his principal, there must be an absolute payment in lawful money. (Story, on Agency, § 215.)

In the case at bar there can be no pretense that Confederate money was lawful currency. It was a treasonable issue: its capital stock the gunpowder and bayonets which upheld the then existing rebellion. This was well known

by plaintiff in error, and when he thus undertook to discharge his obligation, it was an illegal act, in aid of the vain effort to subvert the government beneath whose shadow we sit in judgment.

The ground relied on as a ratification of the pretended payment is equally untenable. It would require strong proofs to establish a ratification when nothing of value is received. The evidence should be affirmative in its character; and then it would be regarded rather in the light of a gratuity than as a ratification founded on a valuable consideration. In the case before us the principal never acquiesced for a moment. True, he would have "no controversy" with his trusted friend Hawkins. He acquitted him of all responsibility; but he very plainly disaffirmed the pretended payment, when he observed that "if Ransom did not make it right he should always think he ought." This could have no other meaning than if it was not voluntarily "made right" a resort would be had to the courts to coerce a compliance with the just demand. This in fact was done at the next term of the court thereafter.

There are many errors assigned, growing out of the defense set up of a compliance with the laws of a *de facto* government. We do not regard these errors as pertinent to the issue.

It is sufficient to observe, in reply to them, that a compliance with no law, rule, or act, designed to aid in the establishment of the independence of the Confederate States, can furnish any defense against a lawful demand. This portion of the answer, setting up in defense the laws of the Confederate States, should have been stricken out on motion.

There is a suggestion of delay, but, inasmuch as plaintiff in error has furnished us with a lengthy brief, evincing earnest convictions in the merits of his case, we will simply affirm the judgment, which is done.

JUDGMENT AFFIRMED.