SARAH SCOTT, ADM'X, &c., v. D. D. ATCHISON AND OTHERS.

1. In May, 1862, Confederate money then being the currency in Texas, A. bought of P., at the price of six thousand dollars in that currency, a tract of land which P. had previously conveyed in trust to secure a debt due by him to the estate of S., deceased. In settling with P. for the land, A. reserved in his hands a balance wherewith to discharge P.'s debt to the estate of S.; and subsequently A. executed to the administratrix of the estate, in her individual name, and in lieu of P.'s note and deed of trust, his own note for the amount, and his own deed of trust on the land to secure its payment, " twenty-four months after the ratifica-" tion of a treaty of peace between the United States and the Confederate "States, payable in whatever may then be the legal tender currency of "the Confederate States : "—whereupon the deed of trust made by P. was released to A. by the trustee. *Held*, that if A.'s note and deed of trust are to be regarded as void for uncertainty or other cause, they cannot be considered a novation or satisfaction of P.'s liability to the estate of S. Nor was the administratrix of the estate competent to accept such void undertakings in liquidation of the liability. But if necessary to protect equitable rights, A.'s note and deed of trust, though dependent on a "treaty of peace," etc., would not, it seems, be held void; nor would a payment of Confederate money, in satisfaction of such a note, be a good payment of it, if made to a trustee or administrator.
2. A novation, like other valid contracts, must be consensual, and must be supported by a consideration, viz., the discharge of the original debt. See the opinion in this case for the legal principles which control the novation of contracts.
3. It was not within the power of an administratrix to give a valid consent to accept a Confederate money contract as a novation of a liability due to the estate, and therefore the original liability to the estate could not have been extinguished by such abortive novation. Kleberg *v.* Bonds, 31 Texas, 611, cited with approval.

APPEAL from Grimes. Tried below before the Hon. J. R. Burnett.

Originally this was a suit brought by D. B. Morrell as plaintiff, against the appellee Atchison and others, as defendants. The appellant intervened, and the matters brought to this court spring from her intervention, and are stated in the opinion. It does not appear that any coercion or pressure was employed by Atchison to influence Mrs. Scott's acceptance of his note and deed of trust in lieu of Pye's; on the contrary, the evidence repelled such a supposition.

*Baker & Maxcy*, and *John C. Easton*, for the appellant.

*C. Caldwell* and *D. D. Atchison*, for the appellees.

WALKER, J. On page third of appellees' brief, we find such a statement of this case as we believe the appellant cannot object to, and, as we think the single point necessary for our consideration is herein presented, we adopt the statement from which we will endeavor to deduce our opinion.

It is as follows:

" The whole subject matter now presented in this case is " simply this point: In May, A.D. 1862, Confederate money " was the currency in circulation. Atchison purchased the " tract of land in controversy from James B. Pye, for about six " thousand dollars, and paid therefor this money, reserving a " balance in his hands with which to take up and discharge a " note of Pye to Noble, and a note from Pye to Mrs. Sarah " Scott, the payment of each of which was secured by a lien on " the land. Wm. Niblett, Esq., the son-in-law and attorney at " law, whose name is signed to intervenor Scott's petition, " agreed to discharge the Pye note, in consideration of Atchi- " son's note, executed to Mrs. Scott, payable two years after a " treaty of peace between the Confederate States and the " United States, the payment to be secured by deed of trust. " And it was accordingly done; and in this way Pye's note " was taken up, paid, and discharged, and the trustee released " the title vested in him, to Atchison."

We must add to this statement of the case, that the appel-
lant, Mrs. Scott, is the administratrix of her husband's estate,
and that the money sued for belongs to the estate.

The question then arises, is the obligation of Pye, and the
lien which he gave upon the land in question, discharged? It
is not disputed but that Pye was indebted to Mrs. Scott on
15th day of March, 1861, in the sum of two thousand four hun-
dred and seventy-five dollars. This was a valid debt, secured
upon the land, on 20th March, 1862, when Pye sold the
land to Atchison, and, as a part of the consideration, Atchison
assumed to pay the same, under the following clause in his deed
from Pye : " And for further consideration, the said Daniel D.
" Atchison does hereby assume the payment of a certain prom-
" issory note, for the sum of two thousand four hundred and
" seventy-five dollars, with interest thereon at the rate of 12
" per centum, from the 9th day of February, A.D. 1861, due the
" 9th day of February, 1862, and executed by James B. Pye,
" on the 15th day of March, 1861, to Sarah Scott of Grimes
" county, and secured by deed of trust on the tract of land
" herein conveyed to said Atchison," etc.

At page 217, 1 Parsons on Contracts, the author informs us
that the term *novation* is derived from the Civil Law, where it
forms an important topic. The term *delegation* also belongs to
the Civil Law, and herein we find the true definition of the
transaction between these parties.

In Pothier on Contracts, Vol. I., top page 444, we find this
language : " *Delegare est vice sua alium reum dare creditori,*
" *vel cui jusserit.* Delegation is a kind of novation by which
" the original debtor, in order to be liberated from his creditor,
" gives him a third person who becomes obliged in his stead to
" the creditor, or to the person appointed by him. It results
" from this definition, that a delegation is made by the concur-
" rence of three parties, and that there may be a fourth. There
" must be a concurrence, first, of the party delegating; that is,
" the ancient debtor, who procures another debtor in his stead;
" second, of the party delegated, who enters into an obligation

" in the stead of the ancient debtor, either to the creditor or some
" other person appointed by him; third, of the creditor, who, in
" consequence contracted by the party delegated, discharges the
" party delegating. Sometimes there intervenes a fourth party,
" viz.: the person indicated by the creditor, and in whose favor
" the person delegated becomes obliged, upon the indication of
" the creditor, and by the order of the person delegating."

" To produce a delegation, the intention of the creditor to
" discharge the first debtor, and to accept the second in his
" stead, must be perfectly evident; therefore, if Peter, one of
" the heirs of my debtor, in order to liberate himself from an
" annuity to me, has, upon a partition of the succession, charged
" his co-heir James with the payment of it, Peter will not be
" liberated unless I formally declare my intention that he shall
" be so; and though I receive the annual payments from James
" for a considerable time, it must not be concluded that I have
" taken him as my sole debtor in the place of Peter, and dis-
" charged Peter."

There must be no illegality or fraud; the transaction must
be free from covin and misrepresentation, and duress *per
minas;* for, says Pothier, pages 554, 557, " There must be no
" obligations which the law reprobates and annuls, for these
" cannot produce any effect. *Vide supra,* p. 92, Ch. 2."

The consent which the creditor gives to the novation of the
debt being equivalent, so far as regards the extinction of the
debt, to a payment of it, it follows that only those to whom a
valid payment may be made can make a novation of the debt.
And for this reason those persons who were under legal inabil-
ity, minors, married women, etc., cannot make a novation; and
apply to this the principle of the common law, that guardians,
trustees, administrators, and executors, cannot change the char-
acter of the trust funds held by them, without an order from a
court of chancery jurisdiction, they, too, it would seem, should
not be allowed to make a novation of an old debt for a new one.
Nor will courts apply the doctrine of presumption, to make out
a novation or delegation which does not clearly appear; and,

says Pothier, the reason of this law is, that a person shall not easily be presumed to abandon the rights which belong to him. And as a novation implies an abandonment by the creditor of the first claim to which the second is substituted, it is not to be easily presumed, and the parties ought expressly to state it. We will not deny but that the acts of parties might be such that the courts would hold that the novation had been consummated. But, says Pothier, "Unless the intention evidently appears, a novation is not to be presumed; therefore, if I attach " the goods of Peter in the hands of James, and James merely " undertakes to pay the money due from me to Peter, without " any expression on my part of taking the security for the sake " of Peter, or some other intimation that renders it evident " that I intend that Peter shall be discharged, it will not be considered as a novation; but James will only be deemed to have " acceded to the obligation of Peter, who continues bound as " my debtor. This was adjudged by an *arret* (act) of the Parliament of Toulouse reported by Catelan, Vol. II., p. 5, Ch. 38."

"Upon this principle," says Mr. Evans, the English editor of Pothier, "it was held by the Court of King's Bench in White *v.* " Cuylor, 6 T. R., 176, that the undertaking of a surety by deed " did not extinguish the obligation of the principal debtor. " And in the case of Hamilton *v.* Cullenden, 1 Dallas, 420, it " appeared that Cullenden gave the plaintiff a mortgage and " bond; that Cullenden's executors afterwards sold the equity " of redemption to Bind, who gave his bond to the plaintiff " for the amount of the principal and interest then due, which was " ruled to be no discharge of the preceding bond. The discussion, as is usual in the American courts, turned principally upon " the authorities of the English law." This last remark of the editor may be very satisfying to English legal pride; but if this were ever true, we incline to think that the rule has changed.

Let us, so far as these principles are applicable, apply them to this case. There was doubtless a concurrence between Pye and Atchison, the delegant and the delegate; but was there any contemporaneous concurrence of Mrs. Scott, the creditor, in the

arrangement? Has there ever been such a concurrence? Apply the maxim "*consensu animo.*"

This kind of contract, like all others, to be binding, must be consensual. It was not until 19th June, 1862, that Atchison entered into the arrangement with Niblett, the appellant's attorney, under which he claims to have extinguished Pye's debt to Mrs. Scott. And how was this accomplished, if at all?

This court has decided at the present term that an attorney has no power to change the securities of his client, unless he be the attorney in fact, specially authorized so to do, under a power. And that payments made to attorneys, administrators, executors, and guardians, in Confederate money, do not extinguish the debt, we have more than once decided. If, then, the payment had been made in confederate money to Niblett, it would not have extinguished the debt; no more would it when made to Mrs. Scott herself, if the debt were a part of the assets of her husband's estate.

But let us look at the nature of Atchison's undertaking. It seems to have been an agreement to pay two thousand eight hundred and seventy-nine dollars and twenty-five cents, " twenty-" four months after the ratification of a treaty of peace between " the United States and Confederate States, payable in whatever " may then be the legal tender currency of the Confederate " States, with eight per cent. interest from date." It appears to be conceded that this contract is void from uncertainty. We are by no means sure that we should adopt this opinion, were it necessary to give it such equitable construction as the rights of parties in a given case might demand; and we say that this obligation was not discharged by payment in Confederate money to Mrs. Scott as administratrix of her husband's estate.

There has been a " treaty of peace," and the Confederate States and all the other States of the United States of America have a legal tender currency; and we think it by no means a foregone conclusion that the contract is void for uncertainty;— but it is perhaps unnecessary to discuss the question farther.

Mr. Parsons, in elucidating the subject of novation, Vol. I.,

page 219, says: "And the general principles in relation to "consideration attach to the whole transaction. Thus, to give to "the transaction its full legal efficacy, the original liabilities "must be extinguished. For if the debt, from A to B, be not "discharged by A's promise to pay it to C, then there is no "consideration for this promise, and no action can be main- "tained upon it; but if this liability be discharged, then it is a "sufficient consideration."

Was Pye's liability, then, to Mrs. Scott, which was valid and binding—in other words, a legal contract, based upon a good consideration,—discharged by Atchison's promise, which we are at one time told is void for uncertainty? And again we are told that the real sum and substance of this promise was to pay the debt in Confederate money, which was accordingly done. Can a binding legal contract be discharged in this way, by the prom- ise to do, or the actual performance of, an illegal transaction? We think not; but if we had any doubt as to the correctness of our opinions, that doubt would be set at rest by the former de- cisions of this court. In the case of Kleberg v. Bonds, 31 Texas, 612, Mr. Justice Caldwell, delivering the opinion of the court, says: "It has been repeatedly ruled by this court, that Con- "federate money, so called, cannot be considered a payment. "True, it has in like manner been held that an executed con- "tract will not be disturbed when Confederate money was the "consideration. (Ransom v. Alexander, 31 Texas, 443.)

"In the case of an administrator receiving a debt due his "intestate's estate, in Confederate money, and surrendering the "evidence of debt, it cannot be viewed in the light of an exe- "cuted contract. The debt still remains due, and may be col- "lected by process of law, because the debtor is bound to know "that an absolute payment in lawful money can only discharge "a debt sounding in dollars, payable to any one acting in a fidu- "ciary capacity." We adopt the doctrine of this case, and that of all other similar cases heretofore adjudicated by this court and the courts of other States. And the doctrine is main- tained in all the insurgent States, except alone the State of

North Carolina.   The learned judge says, in the opinion just quoted, all that we need say on this branch of our case, and must not gainsay, as an attorney, what he has said as a judge. We are not opening up an executed contract where Confederate money has passed, but we propose to enforce a good contract which has not been executed; a contract in no respect illegal was that of Pye with Mrs. Scott, and no illegal contract must come in the way of its execution.

What, then, is the present *status* of the parties?   We hold that Pye's obligation to Mrs. Scott has never been discharged, and that it is a valid incumbrance upon the land that Atchison bound himself to Pye to pay off; that the debt is still an incumbrance upon the land; and that subsequent purchasers of the land, with notice, cannot take it discharged of the incumbrance, and Pye's deed to Atchison is notice to all who claim under or through it.

The pleadings are defective and will require amendment. We might, under the authority of Harwood *v.* Blythe, 32 Texas, 800, proceed to render a judgment in accordance with this opinion; but we deem it better to reverse and remand the case, that parties may have an opportunity of amending their pleadings and presenting the cause to the District Court in accordance with the law herein laid down; which is accordingly done.

Reversed and remanded.