SARAH SCOTT, ADMINISTRATRIX, V. D. D. ATCHISON.

1. An agreement made by an attorney of B. (an executrix) with C., by which the attorney surrendered to C. a note due the estate, given by D., secured by deed of trust on land, in consideration of C.'s note then given to pay the amount mentioned in the note surrendered "twenty-four months after the ratification of a treaty of peace between the United States and the Confederate States, payable in whatever may then be the legal currency of the Confederate States," also secured by deed of trust on the same land, does not discharge the first note, which still remains a valid incumbrance on the land.
2. Only those to whom a valid payment may be made can make a novation of a debt.
3. An executor cannot change the character of the trust fund held by him without the order of a court having chancery jurisdiction ; without such order he cannot make a novation of an old debt for a new one.
4. An attorney has no power to change the securities of his client unless he be the attorney in fact specially authorized so to do.

5. Payments made to an executor in Confederate money do not extinguish the debt.

6. A binding legal contract cannot be discharged by the promise to do, or the actual performance of an illegal act.

APPEAL from Grimes. Tried below before the Hon. James R. Burnett.

Suit brought September, 1865, by D. B. Morrill, as holder and owner of a promissory note on James B. Pye for $1750, against appellee, alleging that it was given to secure so much of the purchase money for a certain tract of land described, which Pye had bought of Noble, and on which a vendor's lien was retained to secure its payment.

Atchison and Manwaring and wife were made defendants, alleging that Atchison bought of Pye and Manwaring and wife of Atchison, all with notice of the vendor's lien.

In April, 1866, the appellant intervened.

There was evidence that in 1857 she loaned Noble $3000 to purchase the land; that he bought it with this money and gave her his note, with trust deed on the land, to secure its payment.

In March, 1860, Noble sold to defendant Pye, and in December, 1860, appellant, at Noble's request, took Pye's note for $2250, with ten per cent. interest from December 22, 1860, and due on the ninth of February, 1861, with trust deed on the land from Pye to secure its payment.

On the fifteenth of March, 1861, this note was renewed by Pye, adding the interest past due, and making a new note to appellant for $2475, due ninth of February, 1862, and executing a new trust deed on the same land to secure its payment, which was recorded. On the twentieth of March, 1862, Pye sold and conveyed to Atchison, and as part of the consideration it was recited in the deed that Atchison would pay this last note of Pye to appellant.

25

On the ninteenth of June, 1862, Atchison gave to the attorney of appellant, in lieu of Pye's note, this written promise of that date, payable to her, for $2879.25, "twenty-four months after the ratification of a treaty of peace between the United States and the Confederate States, payable in whatever may then be the legal tender currency of the Confederate States, with eight per cent. interest from date," and executed to her a trust deed on the same land to secure the payment of that obligation, which was likewise recorded. These her attorney took without any new consideration.

Pye's note was delivered up and her trustee released the trust deed. Afterwards Atchison sold to Manwaring and wife, for Confederate money, and in his deed to Mrs. Manwaring covenanted to remove the then existing incumbrances on the land, including appellant's.

No part of Pye's note or Atchison's undertaking has been paid in money of any kind.

Appellant alleged that Pye was insolvent, and no recovery could be had on Atchison, because of his undertaking being uncertain, and her only security was in the enforcement of her trust. She offered to deliver up Atchison's undertaking and trust deed to be canceled, and asked to be reinstated in all of her rights upon Pye's note and trust deed; that Atchison and Manwaring and wife be compelled to deliver up Pye's note and trust deed, to be enforced in her favor; for judgment against Pye for the amount of his note and interest and foreclosure of the trust deed, and for priority of lien as to the plaintiff Morrill. But, if not thus entitled, and it should appear that Atchison's undertaking was given in place of Pye's note, and intended by him at the time to create a legal obligation on him for its payment, then she asked that it be taken as his recognition and acknowledgment of that amount then due on Pye's note, for which

the land was chargeable, and the execution and delivery of the trust deed by him be held as his declaration and continuance of her express trust upon the land to secure the payment of Pye's note, and for judgment against him for the same and foreclosure of the trust.

And if not so entitled, she prayed for judgment against Atchison on his promise and assumpsit in Pye's deed to pay Pye's note; and because Manwaring and wife purchased with notice of Atchison's trust deed, that she be held to have a lien on the land to secure the payment of the judgment against Atchison, and for foreclosure of it.

At the trial term from which this appeal was prosecuted appellant amended, averring that the money lent to Noble was assets of the estate of James Scott, her late husband, of whose estate she was then and yet remained administratrix.

The appellee demurred to appellant's evidence. The appellants refused to join in the demurrer, upon the grounds that the evidence conduced to prove the material allegations in her petition, and because, under the Constitution, she had the right of the trial of her cause before a jury. The court below compelled a joinder in demurrer, sustained the demurrer to the evidence, and gave judgment for the defendants, from which this appeal is prosecuted.

*Baker & Maxey* and *John C. Easton*, for appellant.

*C. Caldwell* and *D. D. Atchison*, for appellees, cited Thompson, Admr., v. Forbes J. Henson, 31 Texas, 610; Ritchie v. Street, 32 Texas, 335; Vander Haven v. Nette, 32 Texas, 183; Christy v. Hughes, 26 Texas, 235.

WALKER, J.—On page 3 of the appellee's brief we find such a statement of this case as we believe the appellant cannot object to; and as we think the single point neces-

sary for our consideration is therein presented, we adopt the statement, from which we will endeavor to deduce our opinion.    It is as follows :

"The whole subject matter now presented in this case is simply this point.    In May, A. D. 1862, Confederate money was the currency in circulation.    Atchison purchased the tract of land in controversy from James B. Pye for about $6000, and paid therefor this money, reserving a balance in his hands with which to take up and discharge a note of Pye to Noble, and a note from Pye to Mrs. Sarah Scott, the payment of each of which was secured by a lien on the land.    Wm. Niblett, Esq., the son-in-law and attorney at law, whose name is signed to intervenor's (Scott's) petition, agreed to discharge the Pye note in consideration of Atchison's note, executed to Mrs. Scott, 'payable two years after a treaty of peace between the Confederate States and the United States, the payment to be secured by deed of trust.'    And it was accordingly done ; and in this way Pye's note was taken up, and it is claimed was thus paid and discharged, and the trustee released the title vested in him to Atchison."

We must add to this statement of the case, that the appellant, Mrs. Scott, is the administratrix of her husband's estate, and that the money sued for belongs to the estate.

The question then arises, is the obligation of Pye and the lien which he gave upon the land in question discharged ?    It is not disputed but that Pye was indebted to Mrs. Scott on the fifteenth day of March, 1861, in the sum of $2475.    This was a valid debt secured upon the land, on the twentieth of March, 1862, when Pye sold the land to Atchison, and as a part of the consideration Atchison assumed to pay the same, under the following clause in his deed from Pye :

"And for further consideration the said Daniel D. Atchison does hereby assume the payment of a certain

promissory note for the sum of two thousand four hundred and seventy-five dollars, with interest thereon at the rate of twelve per cent. per annum from the ninth day of February, A. D. 1861, due the ninth day of February, 1862, and executed by James B. Pye on the fifteenth day of March, 1862, to Sarah Scott, of Grimes county, and secured by deed of trust on the tract of land herein conveyed to said Atchison," etc.

At page 217, 1 Parsons on Contracts, the author informs us that the term *novation* is derived from the civil law, where it forms an important topic. The term delegation also belongs to the civil law, and herein we find the true definition of the transaction between these parties. In Pothier on Contracts, Vol. 1, top page 444, we find this language:

"*Delegare est vice sua alium reum dare creditori, vel cui jusserit!*"

Delegation is a kind of novation by which the original debtor, in order to be liberated from his creditor, gives him a third person, who becomes obliged in his stead to the creditor or to the person appointed by him. It results from this definition, that a delegation is made by the concurrence of three parties, and that there may be a fourth.

There must be a concurrence:

1. Of the party delegating; that is, the ancient debtor, who procures another debtor in his stead.

2. Of the party delegated, who enters into an obligation in the stead of the ancient debtor, either to the creditor or some other person appointed by him.

3. Of the creditor, who, in consequence of the obligation contracted by the party delegated, discharges the party delegating.

Sometimes there intervenes a fourth party, viz., the person indicated by the creditor, and in whose favor the

person delegated becomes obliged, upon the indication of the creditor, and by the order of the person delegating.

"To produce a delegation the intention of the creditor to discharge the first debtor, and to accept of the second in his stead, must be perfectly evident; therefore if *Peter*, one of the heirs of my debtor, in order to liberate himself from an annuity to me, has, upon a partition of the succession, charged his co-heir *James* with the payment of it, *Peter* will not be liberated, unless I formally declare my intention that he shall be so; and though I receive the annual payments from *James* for a considerable time, it must not be concluded that I have taken him as my sole debtor in the place of *Peter*, and discharged *Peter*."

There must be no illegality or fraud; the transaction must be free from covin and misrepresentation, *duress per minas*. For, says Pothier, pages 554 and 557:

"There must be no obligations which the law reprobates and annuls, for these cannot produce any effect." (*Vide supra.*, p. 2, ch. 2.)

"The consent which the creditor gives to the novation of the debt being equivalent, so far as regards the extinction of the debt, to a payment of it, it follows that only those to whom a valid payment may be made can make a novation of the debt.";

And for this reason those persons who were under legal inability, minors, married women, etc., cannot make a novation; and apply to this the principle of the common law, that guardians, trustees, administrators and executors cannot change the character of the trust funds held by them without an order from a court of chancery jurisdiction, they, too, it would seem, should not be allowed to make a novation of an old debt for a new one.

Nor will courts apply the doctrine of presumption to make out a novation or delegation which does not clearly

appear; and, says Pothier, the reason of this law is, that a person shall not easily be presumed to abandon the rights which belong to him. And as a novation implies an abandonment by the creditor of the first claim, to which the second is substituted, it is not to be easily presumed, and the parties ought expressly to state it.

We will not deny but that the acts of parties might be such that the courts would hold that the novation had been consummated; but, says Pothier, "Unless the intention evidently appears, a novation is not to be presumed; therefore if I attach the goods of *Peter* in the hands of *James*, and *James* merely undertakes to pay the money due from me to *Peter* without any expression on my part of taking the security for the sake of *Peter*, or some other intimation which renders it evident that I intend that *Peter* shall be discharged, it will not be considered as a novation, but *James* will only be deemed to have acceded to the obligation of *Peter*, who continues bound as my debtor. This was adjudged by an *arret* of the Parliament of Toulouse, reported by Catelan." (Vol. 2, l. 5, ch. 38.)

Upon this principle, says Mr. Evans (the English editor of Pothier), it was held by the Court of King's Bench in White v. Cuyler, 6 T. R., 176, that the undertaking of a surety by deed did not extinguish the obligation of the principal debtor. And in the case of Hamilton v. Cullenden, 1 Dallas, 420, it appeared that Cullenden gave the plaintiff a mortgage and bond; that Cullenden's executors afterwards sold the equity of redemption to Bird, who gave his bond to the plaintiff for the amount of the principal and interest then due, which was ruled to be no discharge of the preceding bond. The discussion, as is usual in American courts, turned principally upon the authorities of the English law. This last remark of the editor may be very satisfying to English legal pride; but

if this were ever true, we incline to think that the rule has changed.

Let us, so far as these principles are applicable, apply them to this case. There was doubtless a concurrence between Pye and Atchison, the delegant and the delegate. But was there any contemporaneous concurrence of Mrs. Scott, the creditor, in this arrangement? Has there ever been such a concurrence? Apply the maxim, "*consensu animo.*"

This kind of contract, like all others, to be binding must be consensual. It was not until the nineteenth of June, 1862, that Atchison entered into the arrangement with Niblett, the appellant's attorney, under which he claims to have extinguished Pye's debt to Mrs. Scott. And how was this accomplished, *if at all?*

This court has decided at the present term that an attorney has no power to change the securities of his client, unless he be the attorney in fact specially authorized so to do under a power; and that payments made to attorneys, administrators, executors and guardians, in Confederate money, do not extinguish the debt, we have more than once decided, when made in Confederate money.

If, then, the payment had been made in Confederate money to Niblett, it would not have extinguished the debt; no more would it when made to Mrs. Scott herself, if the debt were a part of the assets of her husband's estate.

But let us look at the nature of Atchison's undertaking. It seems to have been an agreement to pay $2879.25 " twenty-four months after the ratification of a treaty of peace between the United States and the Confederate States, payable in whatever may then be the legal tender currency of the Confederate States, with eight per cent. interest from date."

It appears to be conceded that this contract is void for

uncertainty. We are by no means sure that we should adopt this opinion were it necessary to give it such equitable construction as the rights of parties in a given case might demand; and we say that this obligation was not discharged by payment in Confederate money to Mrs. Scott, as the administratrix of her husband's estate.

There has been a "treaty of peace," and the Confederate States and all the other States of the United States of America have a "legal tender currency," and we think it by no means a foregone conclusion that this contract is void for uncertainty.

But it is perhaps unnecessary to discuss this question further. Mr. Parsons, in elucidating the subject of novation (Vol. 1, p. 219), says: "And the general principles in relation to consideration attaches to the whole transaction; thus to give to the transaction its full legal efficacy, the original liabilities must be extinguished. For if the debt from A. to B. be not discharged by A.'s promise to pay it to C., then there is no consideration for this promise, and no action can be maintained upon it; but if this liability be discharged, then it is a sufficient consideration."

Was Pye's liability, then, to Mrs. Scott, which was valid and binding—in other words, a legal contract based upon a good consideration—discharged by Atchison's promise, which we are at one time told is void for uncertainty? And again, we are told that the real sum and substance of this promise was to pay the debt in Confederate money, which was accordingly done. Can a binding legal contract be discharged in this way, by the promise to do or the actual performance of an illegal transaction? We think not; but if we had any doubts of the correctness of our opinion, that doubt would be set at rest by the former decisions of this court. In the case of Elsberg v.

Bonds, 31 Texas, 612, Mr. Justice Caldwell, delivering the opinion of the court, says:

"It has been repeatedly ruled by this court that Confederate money, so-called, cannot be considered a payment. True it has in like manner been held that an executed contract will not be disturbed when Confederate money was the consideration. (Ransom v. Alexander, 31 Texas, 443.) In the case of an administrator receiving a debt due his intestate's estate in Confederate money and surrendering the evidence of debt, it cannot be viewed in the light of an executed contract. The debt still remains due, and may be collected by process of law, because the debtor is bound to know that an absolute payment in lawful money can only discharge a debt sounding in dollars, payable to any one acting in a fiduciary capacity."

We adopt the doctrine of this case and that of all other similar cases heretofore adjudicated by this court and the courts of other States; and the doctrine is maintained in all the insurgent States, except alone the State of North Carolina.

The learned judge says in the opinion just quoted all that we need say on this branch of our case, and must not gainsay as attorney what he has said as judge.

We are not opening up an executed contract where Confederate money has passed, but we propose to enforce a good contract which has not been executed. A contract in no respect illegal was that of Pye with Mrs. Scott, and no illegal contract must come in the way of its execution.

What, then, is the present status of the parties? We hold that Pye's obligation to Mrs. Scott has never been discharged, and that it is a valid incumbrance upon the land that Atchison bound himself to Pye to pay off; that the debt is still an incumbrance upon the land, and that subsequent purchasers of the land with notice cannot

take it discharged of the incumbrance, and Pye's deed to Atchison is notice to all who claim under or through it.

The pleadings are defective and will require amendment. We might, under the authority of Howard *et al.* v. Blythe (32 Texas, 800), proceed to render a judgment in accordance with this opinion, but we deem it better to reverse and remand the case, that parties may have an opportunity of amending their pleadings and presenting the cause to the District Court in accordance with the law herein laid down, which is accordingly done.

REVERSED AND REMANDED.

Upon rehearing, granted on the application of appellant, the following opinion was delivered :

WALKER, J.—We are unable clearly to discover the object and purpose of the rehearing in this cause. We granted it readily that we might have an argument of the abstruse and difficult question of law which we conceive to be involved in the case; but now, on reading the arguments *pro* and *con* on the motion, we have little else than a dispute about a question of fact, which we are charged with assuming, without authority from the record; and yet counsel admit that the fund sued for did at one time belong to the trust estate in the hands of Mrs. Scott, and on page 161 of the transcript the deed from Noble to Patrick recites this fact, and this in itself, aside from a total want of evidence to show that the character of the fund has ever been changed. And counsel also assert, in the argument upon the motion, in the following language : "Indeed appellants have changed the style of the cause from D. B. Morrill v. J. B. Pye to that of Scott, Administratrix, v. Atchison *et al.* This was evidently done for the purpose of misleading the appellate court," etc. This was very wrong. Counsel should not have suffered

· a new case to be thus imposed upon them, and have this court misled by it. If there was anything wrong in the style of the suit it should have been corrected in the District Court, before the case came here.

But it is admitted all around that our opinion is sound law. We remanded the cause and suggested amendments in the pleadings. Now if our opinion be sound law, and yet the facts do not make out a cause to which it is applicable at all, we are quite sure it can do no harm. But inasmuch as it is supposed to be good law, we will adhere to it, and the judgment of the court will be as therein indicated.

ORDERED ACCORDINGLY.