## WILSON v. J. W. CROWDUS DRUG CO. et al. (No. 1074.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 6, 1916. Rehearing Denied Dec. 20, 1916.)

1. NOVATION ⟷5—ACCEPTANCE OF NEW OBLIGATION.

Where retailer, indebted to a wholesaler, sold his business, the buyers undertaking to pay his debt for which they made cash payment and executed notes to the wholesaler, the wholesaler, not releasing the retailer in fact, did not release him in law by merely taking such notes, this being merely accommodation of the retailer, nor, although the retailer became surety of the buyer as between themselves, did he become secondarily liable to the wholesaler, since a contract once made cannot be unmade without the consent of both parties, and the mere knowledge or notification of the wholesaler as to such relations would not be sufficient, and the fact that the notes were more onerous as to terms than authorized by the retailer was immaterial

as respects his liability on the original debt, and also so far as he was concerned with the notes, since he was not liable on the latter.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 5; Dec. Dig. ⟷5.]

2. NOVATION ⟷5—EVIDENCE.

To produce a novation the intention of the creditor to discharge the first debtor and accept the second in his stead must be perfectly evident.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 5; Dec. Dig. ⟷5.]

3. NOVATION ⟷12—EVIDENCE.

In action on account for goods sold, the defense being that buyers of the business assumed the account, a telegram from defendant's attorney, authorizing plaintiff to accept the buyers' notes for the account, was admissible as showing that plaintiff's giving the buyers such additional time was an accommodation to the debtor and not a novation, notwithstanding such note contained onerous terms not mentioned in the telegram.

[Ed. Note.—For other cases, see Novation, Cent. Dig. § 12; Dec. Dig. ⟷12.]

4. EVIDENCE ⟷271(13)—WHOLE OF CONVERSATION.

In such action, a declaration of plaintiff's agent that it was not his purpose to release defendant by accepting the notes of the buyers was not inadmissible as self-serving, where it was part of a conversation wherein defendant's attorney admitted the defendant did not claim a release by acceptance of the notes; the whole conversation being admissible, and the agent's assertion rendering the attorney's admission understandable.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1087; Dec. Dig. ⟷271(13).]

5. APPEAL AND ERROR ⟷1058(1)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

A creditor's books, showing that the notes of a third person were entered as a credit on a debtor's account, would have had no probative force as showing an agreement to accept the notes as a novation, and, the fact of entry having been otherwise shown, there was no reversible error in excluding the books.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4200; Dec. Dig. ⟷1058(1).]

6. ACCOUNT, ACTION ON ⟷14—VERIFIED ACCOUNT.

Where an account is properly verified under Rev. St. art. 3712, providing for suit on sworn account, it is admissible as prima facie evidence, in absence of a sworn denial by defendant that it was not just or true, etc., as required by such statute.

[Ed. Note.—For other cases, see Account, Action on, Cent. Dig. §§ 41, 42; Dec. Dig. ⟷14.]

7. APPEAL AND ERROR ⟷1051(1)—HARMLESS ERROR—ADMISSION OF ACCOUNT.

The admission of an account, incorrectly made up, was not injurious to appellant sued thereon, where the true account was substantially admitted and proven otherwise to be due and owing.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161, 4162, 4165, 4166; Dec. Dig. ⟷1051(1).]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by the J. W. Crowdus Drug Company and others against Howard T. Wilson. From judgment for plaintiffs, defendant appeals. Affirmed.

---

Ben H. Stone, of Amarillo, for appellant. Reeder & Dooley, of Amarillo, and Spence & Haven, of Dallas, for appellees.

HUFF, C. J. Howard T. Wilson was in business at Sweetwater, under the trade-name of Wilson Drug Company, and purchased from the J. W. Crowdus Drug Company goods from time to time, as shown by an itemized account, amounting to the sum of $2,050.

On the 22d day of June, 1914, Wilson sold his stock of goods at Sweetwater to C. W. Carder and T. B. Holman, for the sum of $4,050, they agreeing to pay therefor, and executed as part payment their three promissory notes for $666.66 each, and the balance of the consideration they agreed to pay to J. W. Crowdus Drug Company of Dallas the open account said company held against Wilson, and at the same time Holman and Carder executed a chattel mortgage to Howard Wilson on the fixtures of the drug company, to secure the three notes executed by them, and to secure Wilson on the open account due the Crowdus Drug Company, in the sum of $2,050.

After selling the drug store, Howard T. Wilson went to Lexington, Mo. Afterwards, Bramlett, a representative of appellee, called on Holman and Carder and was notified that Wilson had promised to obtain an extension of time. Bramlett wrote to Wilson about the matter, and Wilson wired him to, "See Ben Stone, he represents ·me." Stone wired the appellees the following:

"Replying to Bramlett's letter to Howard T. Wilson, am authorized to wire you to give additional time on the basis of $250.00, cash, balance in twelve equal monthly payments."

It appears that afterwards Holman and Carder paid the $250 cash and executed twelve notes, dividing the balance as near as possible in equal amounts, the notes payable monthly, providing for interest, attorneys' fees, and a failure to pay one note should mature all. Wilson admits that he purchased the goods and that he had never paid for them, and admits that he made no agreement that he should be released from the payment of the account and that when Holman and Carder executed the notes appellee did not tell him they would release him from payment. Carder testifies that there was no agreement between Wilson and his firm when they purchased that Wilson would be released from the claim himself; that, when he and Holman bought from Wilson, Wilson stated that he owed the Crowdus Drug Company an account for goods shipped to him in the amount of $2,050; that they assumed the payment of that in the trade with him; and that he did not make any agreement with him that he would be released from the payment of it. After the notes were executed, Mr. Bramlett, who represented the appellee in the adjustment of its accounts, went to see Mr. Stone and told him that it was not his purpose at any time in dealing either with Stone or Wilson, or the Holman-Carder Drug Company, and all parties knew it, to release Mr. Wilson in any of the transactions, and that his instructions were absolutely not to do so; that Stone told him at that time:

"You can proceed against Carder and Holman, and if you can make anything out of them, all right, we are not pleading release and are not seeking a release, and haven't claimed a release, and we will pay the balance of it."

He said:
"If you don't do that, we will undertake to beat you out of it."

Howard T. Wilson admitted in open court upon the trial the following:
"It is admitted by the defendant, Howard T. Wilson, that the Crowdus Drug Company never did say that they would take Holman and Carder's notes and release Wilson, but that the allegation in the defendant's answer that it was agreed by and between the parties that the notes should stand in place of the account was intended to encompass this item, that the release would follow as a matter of law from the facts as plead, and that there was no actual agreement except as the acts the plaintiff did make the agreement."

The appellee in this case brought suit against Wilson, Holman, and Carder on the account as originally made by Wilson with the appellee, and brought into court the twelve notes executed by Holman and Carder, and tendered them into court and offered to surrender them to the defendant Wilson. The trial court instructed a verdict for the appellee against Wilson and Holman and Carder, on the account, less the $250 credit, and, upon the jury's verdict, judgment was rendered against all parties for that amount; Wilson alone appealing this case.

[1] The first assignment of error is to the action of the court in instructing a verdict for the appellee in the sum of $1,772.39. Propositions presented thereunder are that when Wilson sold the business to Holman and Carder, who assumed the amount of the Wilson indebtedness, they became principals and Wilson a surety, and, by extending the time of payment to Holman and Carder without Wilson's consent to the extension made, Wilson was discharged from liability to appellee, and that the evidence shows that the account was settled by the payment of $250 cash by Holman and Carder, and the execution of their twelve notes; that this was either a payment or novation. It is unquestionably true that, when Holman and Carder assumed the indebtedness due appellee by Wilson, they became principal obligors, and Wilson the surety, as between themselves; but this would not necessarily render Wilson a surety as to appellee so as to entitle him to the treatment and protection from appellee as a surety for the debt. This will depend upon whether appellee consented to so change the character of Wilson's liability from principal to surety. A contract, when

once made, cannot be unmade without the consent of both parties. The mere knowledge or notification to appellee of such assumption will not be sufficient. Shapleigh v. Wells, 90 Tex. 110, 37 S. W. 411, 59 Am. St. Rep. 783. See, also, Montague County v. Meadows, 21 Tex. Civ. App. 256, 51 S. W. 556; Heard v. Thrasher, 71 S. W. 811; Witt v. Amarillo National Bank, 135 S. W. 1108; Abernathy v. McDougle, 187 S. W. 503; Newby v. Harbison, 185 S. W. 642.

The fact that Holman and Carder made their notes to appellee and paid $250 on the debt does not of itself operate as a payment or novation. It may be evidence that the appellee has accepted the obligation of the vendees to pay, upon which they may recover. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672. It may be doubted whether this is sufficient to show or present the issue whether the appellee consented to "so change the character of his (Wilson's) liability to such creditor from principal to surety, as to entitle him" to the protection and treatment of a surety. Under our decisions, we are not at all certain that such a result will necessarily follow from the acceptance of the obligation of the vendee alone. If such is not a payment or a novation, the original debt may be sued on and recovery had, and as to such the character and relation of the parties are unchanged, unless the creditor consents thereto. If there is no agreement by the parties that the new evidence of the debt shall be a payment or novation of the old, then the old debt based upon the original contract fixed the character, liability, and responsibility of the parties. This case must therefore turn on the question whether the original debt, as based on the original contract, was paid or novated. If there was not a payment by the notes or a novation, it is a matter of no concern, in so far as Wilson is affected, whether the notes were more onerus than his telegram directed. If the debt was paid by the notes, or if it was novated then Wilson is not liable, his obligation or contract has been discharged, and the question of suretyship becomes immaterial in disposing of the case. There is no evidence in this case that the appellee, at the time Wilson sold to Holman and Carder, knew of the trade, assented to it, or agreed to accept them on such debt. On the contrary, it is shown Wilson took a mortgage on the fixtures of the drug store to secure him against the payment of this debt, evidencing that he regarded himself as liable on the debt. At that time there was no consent on the part of appellee to change the character of the debt. If, in giving the parties time, according to the request of Wilson, there was no agreement to pay the original debt, it is yet in force. It seems to us the case of Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56, is in point. The Supreme Court there says:

"The rule is established by the great weight of authority in England and the court of the American states that where a debt exists, and a note is given therefor, by the debtor, the right of action is suspended upon the original consideration until the note becomes due, and if it is unpaid at that time the creditor may elect to sue upon the original indebtedness, or upon the note, unless the note was accepted as payment of the pre-existing debt. If suit be brought upon the original consideration, and the note be negotiable, the plaintiff must show that it has not been transferred and is lost or destroyed or he must produce and surrender it." 2 Cyc. 183.

The appellee declared upon the account and sought a recovery thereon, and upon which the trial court entered judgment. The pleadings in this case, therefore, bring it within the rule recognized in the case of Casey v. Anderson, 37 Tex. Civ. App. 223, 83 S. W. 840. The above case of Otto v. Halff is valuable upon the question, even though the notes may not be enforced by reason of an unauthorized change from the terms of the telegram, yet, if there was no agreement that there should be a payment of the debt, the original debt is not forfeited by the change in the notes, but suit may be had therefor upon the original consideration. Certainly this case is stronger for appellee than the case cited. The only contention herein is that the extension authorized was a payment in twelve equal installments, while the extension granted was upon twelve notes, with ten per cent. interest and attorneys' fees, and the stipulation that a failure to pay one should mature all. The telegram itself does not purport to direct how the extension shall be evidenced, or the interest to be allowed, or the like. There is no fraud shown in taking the notes or in the change from the terms of the telegram. We think it would be a strained construction to hold the telegram did not authorize the notes. The notes did not purport to bind Wilson to their payment. It in no way obligated him upon them or to their terms. If he was not thereby released from the original debt, their form would not affect him upon his obligation. We do not believe the facts in this case will authorize a finding that there was a novation.

[2] To produce a novation, the intention of the creditor to discharge the first debtor, and to accept the second in his stead, must be perfectly evident. Scott v. Atchison, 36 Tex. 76; Id., 38 Tex. 390.

"Novation can only exist by mutual consent and agreement of all the interested parties, and it is subject to the same rules of evidence that obtain in regard to any other kind of contract. Not only is it necessary to prove that the creditor took a new debtor, but it must be made to appear, in order to release the old debtor, that there was an extinguishment of the old debt, and an agreement to look to the new debtor alone. The mere taking of a new debtor for the old debt would not, standing alone, be sufficient to show novation." Gimble v. King, 43 Tex. Civ. App. 188, 95 S. W. 7; Rushing v. Citizens' National Bank, 162 S. W. 460.

The facts in the King Case, in many of its features, are quite analogous to the instant case. In this case there was no agreement between appellee and Wilson to take Holman and Carder and to release Wilson; in fact, it was admitted in the trial court there was no such agreement. There was no agreement whatever between any of the parties to take Holman and Carder for the debt instead of Wilson. On the contrary, Wilson took a chattel mortgage to secure himself and payable to himself. Under the uncontroverted facts and admission in this case, there could have been no substitution of a new debtor with the intention to release the old one. In fact, the telegram itself shows that it was only intended by Wilson to get an extension of the debt and not to procure the payment of the debt by the substitution of a new debtor.

[3] The second assignment of error will be overruled. The telegram from Stone to appellee, to the effect that the appellees were authorized to accept $250 cash and the balance in twelve equal monthly payments, was, we think, admissible. Wilson had directed the appellee to Stone as his attorney. The notes had not then been executed. This telegram was not immaterial, but showed that Wilson did not consider the cash and notes a payment or a novation of the account, but he agreed thereby to extend the time for its payment. He did not, in so far as appellee was concerned, at that time stand in the attitude of a surety, and the facts that the notes contained provisions for attorneys' fees and 10 per cent. interest, and default of payment of one of the notes should mature all, while not mentioned in the telegram, did not render the message inadmissible on that account. If Wilson is liable upon the original contract, the provisions added to the notes did not affect the admission of the telegram or defeat Wilson's liability on his original undertaking.

[4] The third assignment will also be overruled. This assignment is based on the admission of the declaration of Bramlett to the effect that it was not his purpose to release Wilson by taking the notes and cash payment. This declaration was made after the notes were taken and in the conversation with Stone, the attorney for Wilson. Stone, in that conversation, admitted that he and Wilson were not claiming a release by the acceptance of these notes. This testimony was in its nature an admission that there was no release. The whole conversation relating to that matter we think admissible. Bramlett's assertion would render Stone's admission understandable; that is, that it was not the purpose of either party to effect a release from the original debt. We therefore think the court correctly ruled that this would not fall under the rule excluding self-serving declarations.

[5] The fourth assignment is also overruled. We think there was no reversible error in excluding the appellee's book of entry, showing a credit on the account by the notes. This fact appears to have been shown in Bramlett's testimony otherwise, and its exclusion would not be reversible error on that account. However, this entry would not prove or show an agreement to accept the notes as a novation or as a payment. Under the surrounding circumstances, the telegram of Wilson to appellee, authorizing the extension of time, the admission on his part and that of his attorney, that there was no agreement, and also his admission that he was liable on the account and no pretense that there had been any such agreement actually made except in so far as the act of taking the notes may have shown one, we do not think the mere entry in accordance with bookkeeping would have been entitled to any probative force on the question of agreement. The facts show that the account was credited with the notes, and this was all the book of the account could have shown. There was no reversible error in excluding the evidence.

[6, 7] The sixth assignment presents as error the admission of the verified account sued on for the reason that it does not show a credit proper to August 30, 1913. It is claimed that the $250 paid by Holman and Carder is shown by the petition to have been made, and the account does not appear to have been credited with that amount. The account is properly verified under the statute. Article 3712, Revised Civil Statutes. Wilson did not file a sworn denial that it was not just or true in whole or in part as required by the statute. In the absence of such a plea, the account was prima facie evidence and admissible in testimony. In addition to the above, there was no injury in admitting this account, for it is substantially admitted and proven otherwise that the account for which the judgment was rendered was due and owing by Wilson.

We find no reversible error, and the case will be affirmed.