**AMERICAN FINANCE CO. OF GALVESTON v. PARMENTER MOTOR CO.**

No. 3375.

Court of Civil Appeals of Texas. Amarillo.

March 19, 1930.

Rehearing Denied April 16, 1930.

J. Ralph Schoolfield, of Wichita Falls, for appellant.

Taylor, Muse & Taylor, of Wichita Falls, for appellee.

**JACKSON, J.**

This suit was filed by the plaintiff, E. S. Parmenter, doing business under the tradename of Parmenter Motor Company, in justice court, precinct No. 1, Wichita county, Tex., against the defendant, American Finance Company, a corporation, to recover the sum of $180.

The trial in justice court resulted in a judgment in favor of the defendant. The plaintiff appealed to the county court and there obtained judgment against the defendant for the sum of $180, from which judgment the defendant prosecutes its appeal to this court.

The record discloses that plaintiff was engaged in the automobile business in Wichita Falls, Tex.; that on September 16, 1926, the plaintiff as "dealer" entered into a written contract with the Automobile Finance Company, by the terms of which he agreed to sell to said company certain obligations called "negotiable paper."

The contract stipulates that the plaintiff guarantees payment of any and all negotiable paper transferred by him to the Automobile Finance Company and that he waives presentment and notice thereof, demand, protest, and nonpayment of each and all of such obligations, and authorized the said company to extend the time or times of payment, or otherwise vary the terms of any or all such negotiable paper, without in any manner affecting the liability of the plaintiff thereunder.

This contract also provides that the dealer will discount such negotiable paper a certain percentage, in accordance with certain terms and conditions, with which percentage he shall be credited on the company's books, and which shall constitute a "reserve ac-

count," to be used to pay losses incurred as a result of repossession, confiscation, or embezzlement, if the dealer has not authorized the company to insure against embezzlement; that the dealer will sell to the company all of his retail paper until he gives thirty days written notice to the company of his intention to discontinue such sales; that upon termination of the agreement, the moneys accumulated in the "reserve account" for the dealer are not to be paid until all contingent liability under the contract has been discharged; that on November 26, 1926, the plaintiff sold an automobile to F. A. Marcus, who executed a written contract, obligating him to pay to the Automobile Finance Company the sum of $685.49 in fifteen monthly installments of $45.70, each installment bearing interest at the rate of 10 per cent. per annum after maturity.

The contract was a mortgage lien against the automobile, to secure the payment of said installments. This contract and mortgage was delivered to the Automobile Finance Company by the plaintiff, who signed the following guaranty:

"For value received, I, we and each of us, jointly and severally, guarantee the payment of the indebtedness shown in the Schedule of Payments contained in the within and foregoing instrument, principal, interest and collection fees, as and when due, and of any extension or renewal thereof, in whole or in part, hereby accepting all its terms, provisions and stipulations, authorizing the maker/s without notice to us, or either of us to obtain and the holder of said indebtedness to grant an extension or extensions, renewal or renewals thereof, in whole or in part, as many and often as desired, waiving presentment for payment, demand, protest and notice of protest, and non-payment of said indebtedness, and of any renewal or extension thereof, also hereby agreeing that suit or suits upon this guarantee may be brought, prosecuted and maintained by the holder of said indebtedness against any one or more of us, at the option of said holder, whether suit has been or shall be commenced or prosecuted against the maker/s of said indebtedness by said holder, or not, and that in any suit by said holder against said maker/s, any one or more of us may, at the option of said holder, be joined therein with said maker/s and any such suit may, at the option of said holder, be instituted, prosecuted and maintained without seeking foreclosure of the lien of the chattel mortgage by which the payment of said indebtness is secured, all without prejudice to the rights of such holder against any one or more of us not joined in any such suit; also hereby agreeing that any and all such suits may, at the option of said holder, be instituted, prosecuted and maintained in Galveston County, Texas, and that we and each of us will jointly and severally perform each and all of the foregoing obligations in said County."

This mortgage also, among other provisions, contains the following:

"That in the event of surrender to or repossession by Mortgagee of said car, without process of law, Mortgagor will execute and deliver to Mortgagee statutory bill of sale thereto, and in case of failure or refusal of Mortgagor so to do, Mortgagee shall have full power and authority, and is hereby fully authorized and empowered to execute said bill of sale for and in the name of Mortgagor, and to sign Mortgagor's name thereto, and to do and perform every such other act necessary or proper to transfer Mortgagor's right, title and equity in said car to Mortgagee, including the signing and endorsement of Mortgagor's name to and upon Tax Collector's license fee receipt issued to Mortgagor for the year during which said mortgaged property was sold."

"That voluntary or involuntary surrender of the mortgaged property by Mortgagor to the holder hereof shall not operate to release or relieve Mortgagor from payment of any indebtedness hereunder then remaining unpaid, unless so acknowledged, in writing, at the time by the holder hereof."

The record reveals that F. A. Marcus paid the first twelve installments on the automobile, but defaulted in the payment of the thirteenth installment, which was due December 26, 1927, and failed and refused to pay any other installments, he and the car having disappeared; that the American Finance Company is the successor of the Automobile Finance Company, and, as such, acquired all of its rights and became liable for all of its obligations; that about January 25; 1928, the American Finance Company located the mortgaged car in the possession of one H. V. Gregory, city treasurer of McCamey, Tex., with whom the car had been left by F. A. Marcus; that the Finance Company permitted H. V. Gregory to retain possession of said car on his agreement, with the company, to have it repaired and to assume the payment of the balance of the unpaid installments; that H. V. Gregory paid none of the unpaid installments, disappeared with the car, and neither he nor the car were ever located, although the record shows considerable effort on the part of the Finance Company to locate Mr. Gregory and the car, or either of them.

The finance company, having failed to locate either the car or H. V. Gregory, charged the plaintiff's "reserve account" with the balance of said installments, interest, and the expenses of attempting to locate Gregory and the car, and executed a release, on September 18, 1928, to the mortgage lien against the car, securing the payment of such installments.

The plaintiff admits that, originally, he was jointly liable with F. A. Marcus for the payment of the installments, contained in the mortgage contract, but contends that the defendant was negligent in permitting H. V. Gregory to retain possession of the car, and that such negligence prevented the plaintiff from recovering possession of the car; and also, that the agreement by the defendant with H. V. Gregory, allowing him to retain possession and to become the owner of the car by assuming the unpaid installments, constituted a novation of the original contract, and that by such negligence and novation he was released from all liability on said contract.

The appellant, American Finance Company, challenges as error the action of the trial court in rendering judgment against it, because, under the facts, the agreement by it with H. V. Gregory, allowing him to retain the car on his assumption and promise to discharge the unpaid installments, did not constitute a novation of the original contract.

46 C. J. p. 591, par. 32, reads: "In accordance with the general rule, and in the absence of an agreement that the original obligation be extinguished and the new agreement substituted, the mere acceptance of the note or other obligation of a third person does not effect a discharge of the original obligation by way of novation but will be considered only as a conditional payment or the receipt of a collateral security."

In the case of M. Gimbell & Sons v. King et al., 43 Tex. Civ. App. 188, 95 S. W. 7, 8, the court says: "Novation can only exist by mutual consent and agreement of all the interested parties, and it is subject to the same rules of evidence that obtain in regard to any other kind of contract. Not only is it necessary to prove that the creditor took a new debtor, but it must be made to appear, in order to release the old debtor, that there was an extinguishment of the old debt and an agreement to look to the new debtor alone. The mere taking of a new debtor for the old debt, would not, standing alone, be sufficient to show novation."

See, also, Scott v. Atchison et al., 36 Tex. 76; Austin v. Guaranty State Bank (Tex. Civ. App.) 300 S. W. 129; Hall et al. v. First State Bank of Hawley (Tex. Civ. App.) 4 S.W.(2d) 253.

There is no testimony in the record that F. A. Marcus was ever released in writing, as provided in the contract, from the payment of any of the installments; neither is there any testimony of any express agreement to release F. A. Marcus and the appellee from their joint or several liability on the original obligation.

The testimony fails to show that appellee was expressly discharged and the original obligation canceled. Immediately upon the transaction between the appellant and H. V. Gregory, it notified appellee of what it had done. It continued to advise the appellee from time to time by letter of its efforts to find the car, find Gregory, and collect the balance. The appellee did not demand that appellant take possession of the car, nor that it institute suit to collect its debt, nor did he assert that the action of the appellant had released him from his obligation.

On April 18, 1928, the appellee wrote appellant, asking if it had located H. V. Gregory, and stated: "We do not want the F. A. Marcus balance charged to our reserve until Gregory is found and the car repossessed."

In our opinion, the testimony in the record tends to show that appellant did not intend to release the appellee from his obligation, and, tends to show also, that appellee did not understand that it was the intention of appellant to release him.

The testimony is insufficient to warrant the conclusion that the appellee was released either by an express or implied contract.

The judgment of the trial court cannot be sustained on the question of negligence in appellant's permitting H. V. Gregory to take the car and its release of the mortgage, because, if such was negligence, the appellee could only recover the amount of his damages and there is no testimony as to the value of the car or the loss to appellee by such acts.

The judgment is reversed, and the cause remanded.