VANCE & BRO. v. ABRAHAM BURTIS.

1. The statute of the *de facto* government, passed during the existence of the late civil war, confiscating debts due to citizens who adhered to the United States government and requiring their payment into the Confederate treasury, is no defense to a suit by the original creditor since the overthrow of the Confederate government.
2. Confederate money never had any legal value.*

*See Shearon v. Henderson, 38 Texas R., page 245, for the rule as applicable to suits by executors, guardians and trustees.—REPORTERS.

APPEAL from Bexar.  Tried below before the Hon. Geo. H. Noonan.

The third assignment referred to in the opinion was based on the refusal of the court to sustain the objection to permitting the witness, N. O. Green, Confederate States receiver, to answer the following question, viz., " What would the Vances have been subjected to if they had refused to pay you ?"

*Wœlder & Upson*, for appellants.

*W. B. Leigh*, for appellee.

WALKER, J.—Isaac Lightner, in the month of June, 1860, made and delivered to Caldwell, Edmonds & Co. his promissory note, due nine months from date, for about $3100.

The payees of the note endorsed the same to Elias M. Green, of the firm of Burtis & Green, of New York, probably for the purpose of obtaining a discount, or to secure Burtis & Green in acceptances which they had made in favor of Caldwell, Edmonds & Co.

The note was sent to Vance & Bro. for collection, or rather that it might be discounted if Lightner saw proper to take it up before maturity.

Lightner did discount the note by giving Vance & Bro. $3000 of government drafts or vouchers, payable at New Orleans.  These vouchers were sent to New Orleans by Vance & Bro.  The money was paid and deposited in the City Bank.

It appears that Caldwell made some objection to the money being sent to Burtis & Green, but this is a matter of no significance whatever in the determination of the rights of the parties to this suit.

Burtis & Green appear to have failed in business; they have passed through an insolvent court; their assets sold,

and this note or claim seems now to have become the property of A. Burtis, the appellee. ·

This suit, however, was commenced by Caldwell, Edmonds & Co. to sequester the money in the hands of Vance & Bro. Since the war Abraham Burtis intervened, and prosecutes the suit, Caldwell, Edmonds & Co., for some reason, having retired from the case. On the final hearing of this cause there was a judgment against the Vances for about $1300, from which judgment both parties appeal.

It is contended on the part of Vance's attorneys that Burtis has not established his ownership of the claim. If this be true, he may yet have the opportunity of so doing.

It appears from the facts in the case, that in October, 1861, N. O. Green, Confederate States receiver, garnishing Vance & Bro., instituted proceedings for the sequestration of the money due Burtis & Green, as alien enemies.

Green succeeded in his sequestration suit, and Vance & Bro.—not unwillingly, it would seem from this record—paid him the debt in Confederate money. We think, disregarding the printed pamphlet found in the record as evidence in the case of Burtis's ownership of the claim, that the evidence of N. W. Burtis and Joseph A. Sprague settles this question.

Taking all the facts in the case, there can be little or no doubt that Burtis & Green became the real owners of the Lightner note, and that Abraham Burtis has succeeded to their rights.

The question to which our attention is especially directed is, what are those rights? Vance & Bro. were collecting agents of Burtis & Green, for a commission; they collected the money, and, for anything we find in this record, they remain liable for it. The whole question turns upon the force and effect of the act of the Confeder-

ate court, and the payment of this claim in Confederate money to N. O. Green, and this question is fully settled in the sequestration cases, 30 Texas, 708, 709; Ransom v. Alexander, 31 Texas, 443. In the latter case the court uses this emphatic language :

"No compliance with a law, rule or act designed to aid in the establishment of the independence of the Confederate States, can furnish any defense against a lawful demand."

A condemnation by a prize court of an insurgent State, during a civil war, will not be recognized by a legitimate government. In Shortridge v. Mason, 2 American Law Review, it is said "that the statute of a *de facto* government, passed during the existence of a civil war, confiscating debts due to citizens who adhered to the national government, and requiring their payment into the rebel treasury, is no defense, after the suppression of the rebellion, to a suit by the original creditor." (See also Texas v. White, 7 Wallace, 700; The United States v. Keehler, 9 Wallace, 83; Knox v. Lee, 12 Wallace, 457.)

We need notice but one other branch of this case. The court ruled out evidence tending to show the commercial value of Confederate money in San Antonio at the time the Vances made their payment to Green. This ruling of the court was certainly proper—but it was certainly very improper, without the evidence, to direct the jury, in the charge, to find the value of Confederate money. This court has repeatedly said, and now says again, that Confederate money never had any legal value, for the all sufficient reason that it never had a legal existence.

The third assignment for error will be seen to have been well taken, by reference to The United States v. Keehler, 9 Wallace, 83. The court here say :

"A public debtor of the United States cannot defend against a suit on his official bond, by proving that he

paid the money due the United States to one of its cred-itors, under an order of the Confederate authorities, when he shows no force or physical coercion which compelled obedience to said order."

We need not notice the other assignments for error.

We have, perhaps, sufficiently laid down the law in this case. The Vances are entitled to no credit for Con-federate money paid N. O. Green, the Confederate re-ceiver ; and if the appellee establishes his ownership of the claim, he is entitled to recover.

The judgment of the District Court is reversed and the cause remanded.

                              REVERSED AND REMANDED.