## D. D. ATCHESON v. SARAH SCOTT.

1. CONFEDERATE WAR, CLOSE OF.—A promissory note, " payable
   twenty-four months after the ratification of a treaty of peace be-
   tween the United States and the Confederate States of America,
   with eight per cent. interest from date, in whatever may then be
   the legal tender of the country," executed June, 1862, was valid,
   and became due two years after the close of the war, and was pay-
   able in United States currency.
2. OVERRULED.—Thompson v. Houston, 31 Tex., 610.

3. NOVATION—TRUST—NOTICE.—The rule that an administrator or trustee cannot make a novation of an old debt by accepting in lieu thereof another obligation, without authority of a court having jurisdiction over trusts, &c., is subject to the rules governing negotiable paper; and an administrator holding a note payable to himself could accept in lieu thereof the obligation of another, such other being ignorant of the trust nature of the debt.

4. SAME.—Proceedings to disregard a novation made by a trustee of commercial paper, should allege notice in the other party to such contract.

APPEAL from Grimes.    Tried below before the Hon. James R. Burnett.

This case was before the Supreme Court in 1873.    (38 Tex., 384.)    In the report of the case, on pages 384–386, a statement of the matters in controversy is given.

After the case was remanded, Mrs. Scott further amended her petition in intervention making —— Johnson a party, alleging that he had bought the land of Mainwarring pending this suit and with notice of the lien of intervenor, (Mrs. Scott,) and that by agreement between them Johnson retains of the purchase-money enough to pay this claim of appellee, if it shall be held a lien upon the land.    There was no allegation that Atcheson, when he gave his note in novation for the Pye note to Mrs. Scott, knew the money belonged to the estate of her husband.

Johnson answered, setting up his agreement with Mainwarring, by which it appears that he held back of the purchase-money sufficient to pay appellee's ( Mrs. Scott's ) debt, and for that purpose, subject to the result of the suit.    It was shown in evidence that pending the litigation Atcheson paid the $1,750 note of Pye, which was the foundation for this suit.

Judgment was rendered for Mrs. Scott for the amount of the Pye note set up in the intervention as still unpaid, and interest, and ordering the sale of the land.    Atcheson appealed.

*Waul & Atcheson*, for appellant.—The opinion of the court in 38 Texas was both irrelevant and foreign to the issues tried in the court below, and could as aptly be applied to any other case as to the one presented in the record. There was a supplemental petition filed in September, 1872, in accordance with the views expressed in that opinion, setting up a new and entirely different cause of action; and Sarah Scott, sixteen years after the death of James Scott, seeks, as administratrix, to annul and avoid her contract with plaintiff in error, wherein she had voluntarily given up the note of James B. Pye and accepted the note as set forth in her original petition of intervention.

To this new suit, as we say it is, we filed our demurrer and our plea of estoppel, supported by the petition for sequestration besides, upon the indebtedness of plaintiff in error on his note as above, and as sworn to by defendant in error, which demurrer and plea of estoppel were overruled.

I. "A party ought not to be heard to contradict and falsify his own solemn admissions and declarations made before the judicial tribunals," says Justice Wheeler. (Portis *v*. Hill, 14 Tex., 79; Page *v*. Arnim, 29 Tex., 72.)

II. On the case as presented, the judgment could only be on the note of James B. Pye. Atcheson, being ignored in the whole transaction, was required to deliver up the Pye note, which he did; and yet the judgment is not based on that note. It is based on the assumption of Atcheson in the deed of Pye and wife to him, and for the amount of the Pye note and interest thereon; and not only so, but execution for any balance, in the event that the property does not bring the debt.

III. We submit, that the only cause of action Sarah Scott ever had or ever could have against plaintiff in error, is on the note executed to her June 19, 1862, according to its tenor and terms, and that by a fair construction she was not entitled to a cause of action on said note until two years after the war, and that she could only recover on this note to the

extent of the value of Confederate money in gold at the date of said note, in accordance with the rule of action in like cases decided by the Supreme Court of the United States. (Thorington *v.* Smith, 8 Wall., 1; Mathews *v.* Rucker, 41 Tex., 636; Short *v.* Abernathy, 42 Tex., 98.)

*Daniel D. Atcheson,* for appellant, cited and discussed Portis *v.* Hill, 14 Tex., 79; Harrison *v.* Boring, 44 Tex., 269; Portis *v.* Hill, 30 Tex., 563; Big. on Est., 556; Kennedy *v.* Briere, 45 Tex., 305; Roberts *v.* Shultz, 45 Tex., 185; Rodgers *v.* Bass, 46 Tex., 513; McManus *v.* Scott, 48 Tex., 601; Page *v.* Arnim, 29 Tex., 72; Thorington *v.* Smith, 8 Wall., 1; Mathews *v.* Rucker, 41 Tex., 636; Short *v.* Abernathy, 42 Tex., 98.

*J. A. Baker,* for appellee.—The facts of this case, we think, are so clear and so far from controversy, that we have simply to state them in order to present the question of law on which the case depends.

1st. The fact is not controverted, that the amount due appellee is of the assets of her husband's estate, and has not been paid.

2d. The fact is not controverted, that Pye owed this money, $2,475, and that its payment was secured by trust deed on the land.

3d. The fact is not controverted, that Pye's deed to Atcheson shows on its face that the latter agreed and undertook to pay this debt to Mrs. Scott as part of the purchase-money from him to Pye for this land.

4th. The fact is not controverted, that this deed, as also Atcheson's trust deed to Mrs. Scott, were both on record at the time Mainwarring bought, and his deed from Atcheson shows that he used the precaution to note in it that incumbrances were on the land, which Atcheson covenanted to remove and discharge.

5th. The fact is not controverted, that Johnson bought from Mainwarring with notice, and now holds enough of the pur-

chase-money to pay this debt, if established as à lien on the land. The judgment is rendered against Atcheson for the amount of Pye's debt which he agreed to pay, and the lien is established and the land ordered to be sold to satisfy it. Is not this the law and equity of appellant's case? We think so most clearly, for these reasons:

I. To the extent of Pye's debt to Mrs. Scott, Atcheson bought the land on credit, and the law secured its payment by retaining on the land a vendor's lien, no other security being taken. This fact appeared on the face of the deed from Pye to Atcheson, and it was of record, and was notice to all claiming under or through him of the unpaid purchase-money and the vendor's lien on the land to secure its payment.

II. By accepting the deed and land from Pye, Atcheson thereby became liable to Mrs. Scott for payment of Pye's debt according to the stipulation in the deed, and she may maintain her action for its recovery. (Monroe v. Buchanan, 27 Tex., 241; Goodwin v. Gilbert, 9 Mass., 510; Pike v. Brown, 7 Cush., 133.)

There is no plea that Atcheson's promise is within the statute of frauds. But if any point be made in this, we refer to Ellwood v. Monk, 5 Wend., 235; Olmstead v. Greenly, 18 Johns., 12; Lee v. Fontaine, 10 Ala., 755; Hall v. Rodgers, 7 Hump., 536; Hilton v. Dinsmore, 21 Maine, 410; Farley v. Cleveland, 9 Cow., 639; Mercein v. Mack, 10 Wend., 461. That there are authorities opposed to this view of the law, may be admitted; but this is the better doctrine as held by the commentators. (1 Smith's Lead. Cas., 276–278; 2 Pars. on Cont., 305, 306.)

Privity as between Atcheson and Mrs. Scott is not the question. If he, as part of the consideration for the purchase of the land from Pye, promised the latter to pay his debt to Mrs. Scott, she may avail herself of it as a promise for her benefit, and the promise is not within the statute of frauds. (11 Adol. & E., (39 Eng. Com. Law.,) 446.) It is there said: "The promise which is required to be reduced to writing by

the statute, is a promise to the creditor; but a promise to the debtor or a third person to answer to the creditor, is not required to be in writing." (See Smith on Cont., 117, 118, 165–167; Hargreave *v.* Parsons, 13 M. & W., 561; Johnson *v.* Gilbert, 4 Hill, 178; 2 Pars. on Cont., p. 306, note 6.) And, again, Atcheson's promise was to subserve his own interest, and therefore need not be in writing. (2 Pars. on Cont., 305, and notes; Nelson *v.* Boyanton, 3 Metc., 396; Williams *v.* Leper, 3 Burr., 1886; Lemmon *v.* Box, 20 Tex., 329; Small *v.* Schaefer, 24 Md., 143; Corkins *v.* Collins, 16 Mich., 478.)

Moreover, Pye conveyed to Atcheson property of greater value than the debt to Mrs. Scott, and a deduction of the amount to be paid Pye was made as the consideration of Atcheson's promise to Mrs. Scott. Atcheson then stood with money in his hands, to the extent of this value, placed there by Pye for the purpose of paying this debt to Mrs. Scott, and was a trustee to her use and benefit, and has refused to apply it as agreed. (Deamley *v.* Deforest, 3 Conn., 272; 2 Pars. on Cont., 307, 308, notes *v, w;* Williams *v.* Leper, 3 Burr., 1886; Edwards *v.* Kelly, 6 M. & S., 204; Bumpton *v.* Pauline, 4 Bing., 264.)

As further authority to show that Mrs. Scott could maintain a suit against Atcheson, we cite McCown *v.* Schrimpf, 21 Tex., 22; Arnold *v.* Lyman, 17 Mass., 400; Schemerhorn *v.* Vanderheyden, 1 Johns., 139; Fellows *v.* Gilman, 4 Wend., 414; 1 Chitty on Plead., 415, and notes; Smith *v.* Allen, 28 Tex., 497.)

III. If, then, Mrs. Scott may maintain the suit against Atcheson, and she had a vendor's lien, which we think is clear, the land is bound in the hands of all persons claiming through or under Atcheson with notice. To support this proposition, we need not cite authority. And that Mainwarring and Johnson had notice, is not controverted by the proof, but, on the contrary, is affirmatively shown by the testimony; and it is further shown that they have provided for

this debt, in the event that appellee's lien on the land be established, by Mainwarring leaving in the hands of Johnson sufficient of the purchase-money to discharge the lien, which money he still holds.

These propositions being clear, as we think, it would follow that the judgment below is correct, unless there be something in the transactions between Atcheson and Mrs. Scott to deprive her of the relief which the judgment below accords her, to wit, judgment against Atcheson for the amount of Pye's debt, with decree of foreclosure of her lien on the land. For the following reasons, we maintain that she was not thereby prejudiced:

1st. Taking Atcheson's written promise, which was not collectible, was not a novation of his assumpsit and liability arising out of his acceptance of Pye's deed, as has been held in this case, and which, we take it, is to be understood as the law of this case upon this point until reversed by this court.

2d. The proof shows that Pye's debt was a trust fund in Mrs. Scott's hands, and this court has held that she could not change its character except under order of this court. (Scott v. Atcheson, 38 Tex., 384.) And if she could not change the character of the fund, it would follow that she could not change the character of the security unless by like authority. (31 Tex., 611.)

3d. Atcheson's promise was payable two years after a treaty of peace between the United States and the Confederate States, which subsequent events have shown was an impossible event and time; and, therefore, the undertaking was void for uncertainty as to time of payment. (Thompson v. Houston, 31 Tex., 610.) Whatever explanation might be allowable as to the meaning of the parties in the use of this language, on proper allegation in the pleadings, we must remember that we have no such allegations in this case, and are, therefore, confined to the ordinary signification of the words used, which certainly designate an event and time which we know could never occur.

4th. The character of funds in which Atcheson's promise was payable was an impossible one. None such then existed, nor could ever thereafter exist, for the reason that the promise contemplated payment in such funds as might be a legal tender in the Confederate (not the United) States after the making of the treaty of peace, on the making of which the maturity of the promise depended.

5th. It is shown there was no new consideration for Atcheson's promise; on the contrary, that the rate of interest was reduced from twelve to eight per cent., without consideration and without authority of the court, and, therefore, to the detriment of the trust fund and unauthorized.

6th. If a new security be given for an old one, and the former proves to be void, the liability on the old one is revived. This is the rule where one deed is made for another and the second one proves to be void, and we see no reason why it may not and does not apply to security. (Galbreath *v.* Templeton, 20 Tex., 47.)

7th. But if Atcheson's promise was void for the reasons mentioned, his trust deed was an acknowledgment of his liability for Pye's debt, and the trust thereby created is binding on him, and all claiming under him had notice of it, and took the land subject to it.

Gould, Associate Justice.—Our opinion is, that a promissory note made in this State during the late civil war, payable " twenty-four months after the ratification of the treaty of peace between the United States and the Confederate States of America, with eight per cent. interest from date, in whatever may then be the legal tender of the country," is not void for uncertainty or illegality, nor is it, when properly construed, a note payable in Confederate money. As in cases of contracts payable in Confederate money, this court has departed from the line of decisions inaugurated shortly after the war, at a time and under circumstances unfavorable to the proper disposition of such questions, so in this case of a

similar question involving like considerations, we do not hesitate to take the same course. The case of Thompson *v.* Houston, 31 Tex., 610, may be regarded as overruled. The court below, following that case, charged that the note above set forth was "illegal and void," and in so doing committed a material error.

We regard the judgment of our predecessors on the former appeal of this case (36 Tex., 76, and 38 Tex., 384) as amounting in substance to a reversal on the facts. The conclusion that Pye's debt had not been discharged, (the payment of which debt Atcheson had assumed, and, as he claimed, had consummated,) was predicated on the assumption that Pye's note belonged to the estate of the husband of Mrs. Scott, she being administratrix, and on the further legal proposition that neither the administratrix nor her attorney could make a novation of that debt by accepting in lieu thereof such a note as has been described. If this conclusion depended upon the invalidity of the note accepted, we have already stated our position on that subject. The writer, however, construes that opinion as denying the right of Mrs. Scott to accept in lieu of a note belonging to the estate any other note whatever, unless authorized thereto by the court, and as placing the conclusion reached on that ground. In applying this legal proposition to the case, it is to be borne in mind that Pye's note was payable to Mrs. Scott individually, and that she, being the apparent and legal owner and holder, had it in her power to transfer it at her own will, and that any person innocently and in good faith trading for the note would acquire the legal ownership. Unless Atcheson had notice that Mrs. Scott, in accepting his note as a payment of the Pye note, was acting without authority and in violation of her duty as administratrix, our opinion is, that the principle invoked was inapplicable and that the transaction was valid. The judgment of this court on the former appeal, in so far as it was founded on the conclusion of fact that the Pye note belonged to the estate, does not constitute the law of the case

on that point, where the evidence is different; and in so far as it was founded on a denial of the power of Mrs. Scott to transfer or novate to an innocent party a note payable to her, by taking in lieu thereof such a note as Atcheson gave, does not command our assent.

The pleadings of Mrs. Scott, originally, were insufficient to present the issue as to her power to control the Pye note, and even as amended, after the reversal, contained no averment charging Atcheson with notice of the rights of the estate. The evidence shows that the estate of Scott is not yet closed; but it appears that Patrick, who was for many years chief justice of the county, and who acted as trustee for Mrs. Scott in the various deeds of trust taken in the various novations of the debt growing out of a loan to Noble in 1857, supposed that Mrs. Scott was managing her own money, and, for aught that appears, Atcheson acted under the same belief. Indeed, the evidence that the Pye note belonged to the estate is not satisfactory, and the issue on that point was submitted to the jury in such a way as to lead them to infer that it depended mainly on the question, whether the original fund loaned to Noble, five or six years before, belonged to the estate. Both the pleadings and evidence impeaching the alleged payment by Atcheson of the Pye note were insufficient.

This litigation seems to have originated in incorrect views on both sides as to the validity and construction of the note by Atcheson. Our opinion is, that it was a valid note, payable in legal-tender notes two years after the close of the war. The difference in the rate of interest makes it largely to the benefit of appellant that his unquestionable liability to Mrs. Scott be enforced according to their contract on his note to her.

Regarding the errors committed as fundamental, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.