TANDY v. FOWLER.

(Court of Civil Appeals of Texas. Amarillo. June 29, 1912. Rehearing Denied Oct. 12, 1912.)

1. PLEADING (§§ 11, 35*) — SUFFICIENCY — SURPLUSAGE—TRESPASS.

Where the petition in an action for damages by trespassing cattle, in addition to alleging that the trees and fences injured were a part of the realty, also alleged the value of the trees and specifically itemized the injury to the fence, the latter allegations, being merely surplusage and statements of evidence, did not render the petition fatally defective.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 31, 76–80; Dec. Dig. §§ 11, 35.*]

2. EVIDENCE (§ 544*)—EXPERTS—COMPETENCY.

Where, in an action for damages from cattle trespassing on wet lands, it did not clearly appear that farmers offered as expert witnesses on the effect of pasturing on agricultural lands when wet were qualified to testify as experts upon their productiveness, the court did not err in refusing to permit them to testify.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2356; Dec. Dig. § 544.*]

3. EVIDENCE (§ 533*)—EXPERT TESTIMONY.

The extent of the damage done to wet agricultural lands by pasturing cattle upon them was a proper subject for expert testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2341; Dec. Dig. § 533.*]

4. EVIDENCE (§ 501*)—OPINION EVIDENCE— NONEXPERTS.

Witnesses offered in a trespass case to prove the effect upon productiveness of pasturing wet agricultural lands could not testify as nonexperts, where the facts on which their testimony was based were not given.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2293–2305; Dec. Dig. § 501.*]

5. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action for damages for cattle trespassing on wet agricultural lands, an instruction that, as the plaintiff had not shown a right to exclude defendant from other lands in the same inclosure, she could not complain that defendant's cattle wandered over her lands, being on the weight of the evidence and in effect a peremptory charge, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

6. ANIMALS (§ 92*)—TRESPASS—RIGHT OF ACTION—COMMON INCLOSURE.

The rule that a party whose lands are in a common inclosure with the lands of another cannot complain of damages from stock which wander from the other party's lands to his own, but it is his duty to fence against such stock, does not apply where the trespassing stock belong to a third party, and are not rightfully upon the other party's portion of the inclosed land.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 330–333; Dec. Dig. § 92.*]

7. ANIMALS (§ 92*)—PASTURING STOCK—TRESPASS—LIABILITY—FENCE.

It is not material to a cattle owner's liability for trespass that the lands were not properly inclosed with a fence, where he committed the trespass by pasturing his cattle thereon under a claim of right.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 330–333; Dec. Dig. § 92.*]

8. ANIMALS (§ 92*)—TRESPASS—RIGHT OF ACTION—COMMON INCLOSURE.

The rule that a party whose lands are in a common inclosure with the lands of another cannot complain of damages from stock wandering from the other party's lands to his own does not apply so as to prevent his recovery for damages done by cattle which are intentionally pastured upon his lands under a claim of right.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 330–333; Dec. Dig. § 92.*]

9. LANDLORD AND TENANT (§ 79*) — TRANSFEREE OF TENANT—PASTURING LANDS AFTER LEASE EXPIRED.

The right of a tenant to enter after termination of his lease for the purpose of harvesting his crop does not authorize a party to whom the tenant has transferred his rights to pasture the land with cattle to the damage of the owner, though the transferee has purchased a stalk field on the land without knowledge that the lease had expired.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 244–253; Dec. Dig. § 79.*]

10. LANDLORD AND TENANT (§ 75*)—LEASE— ASSIGNMENT.

Sayles' Ann. Civ. St. 1897, art. 3250, providing that a tenant shall not rent leased premises to another without the landlord's consent, prohibits the assignment of a lease without such consent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 222–224, 229; Dec. Dig. § 75.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

150 S.W.—31

Appeal from District Court, Ochiltree County; F. P. Greever, Judge.

Action by Mrs. M. J. Fowler against A. H. Tandy. From a judgment for plaintiff, defendant appeals. Affirmed.

H. E. Hoover, of Canadian, for appellant. R. T. Correll, of Ochiltree, F. P. Works, of Amarillo, and Baker & Sanders, of Canadian, for appellee.

HALL, J. Appellee, Mrs. Fowler, instituted this suit, alleging that she was the owner of the S. ½ of a certain section of land in Ochiltree county on January 1, 1910, which she had under fence; that there was standing thereon a maize and Kaffir corn stalk field of 120 acres, and on the balance of the land there was wheat stubble, native grasses, 13 apple trees, 2 almond trees, 4 grape vines, and 156 other trees; that on the 12th day of January defendant wantonly, and without plaintiff's consent, drove a herd of cattle through her fence around said lands and onto said lands, and herded and pastured them thereon until the 3d day of March, 1910; that said stalk field was of the value of $600, said stubble and grass of the value of $150, of all of which defendant took possession and converted to his own use and benefit; that said trees were unsevered from the land and formed a part of said realty, and were of the value of $5 each, or the aggregate value of $855; that defendant broke and tore down plaintiff's fences for the purposes of letting his cattle to water, injuring same in the sum of $50; that during the time the defendant's cattle were so trespassing on plaintiff's land they tramped the same while wet and unfit for pasturage, and by so doing injured the same, rendering it unfit for cultivation for the next two years, said land being damaged in the sum of $3 per acre, or in the gross amount of $960 on that account; that, in addition to the loss of said stalk field, stubble, and grasses, plaintiff was additionally damaged in said injuries to said real property in the loss therefrom of said trees, the breaking down of said fence and the tramping down of said land, in the aggregate sum of $1,865, and the value of his land being decreased in the amounts above alleged, amounting to that sum, making a total of $2,615 actual damage plaintiff has suffered. The amended answer filed by appellant consisted of general and special exceptions, general denial, and a special answer, alleging that at the time of the alleged trespass plaintiff's land was in a common inclosure with other lands belonging to other parties, was in the possession of J. R. McCurdy, who lived within said inclosure, and who had raised the crop mentioned in plaintiff's petition, and possessed every indication of ownership thereof; that defendant had purchased from McCurdy the right to turn his cattle in the inclosure and graze therein for a valuable consideration, and that, under such sale,

turned his cattle therein in the usual and ordinary course of business; that he believed said McCurdy had a right and authority to make the sale to him and to permit him to pasture the premises; that the remainder of the land in said common inclosure was claimed to be the property of one Astell, who had sold the right to pasture the stubble and grass thereon to one Wentz for a valuable consideration, with the understanding that said Wentz would sell the pasturage rights to defendant; that defendant had purchased the same, and had the right to pasture upon the said Astell land. It appears from the record that the right acquired by Wentz from Astell was evidenced by written contract, and the interest conveyed is set out in the following language: "His interest in and to a certain crop of Kaffir corn and milo maize, raised on his place twelve miles south of Ochiltree, Texas, for John McCurdy, on what is known as the Henry McCurdy section. The party of the second part (Wentz) covenants and agrees to take the above described crop at the price and to pay for the same in cash, and it is hereby specifically agreed that no title to this crop is to pass to the party of the second part until the full sum herein stipulated for shall have been paid."

Numerous assignments are presented in appellant's brief, which in our opinion will not be necessary for us to consider in detail.

[1] The first assignment complains of the ruling of the court upon appellant's first special exception to plaintiff's petition. This exception is leveled at plaintiff's claim for damages, and declares that it is irrelevant and immaterial, and that the petition shows that plaintiff was not entitled to recover for such damages in the manner and form alleged. This assignment must be overruled. As will be seen, the petition separates the stalk field, stubble, and grasses (and treats them as personalty) from the trees and fences, specially alleging the latter to be a part of the realty. The fact that the value of the trees is alleged and the injury to the fence specifically itemized is merely surplusage and the allegation of what might be evidence. The proof was confined, in so far as the value of the trees and the fence is concerned, to the value of the land before and after the alleged trespass and the court in its charge limited the recovery to this theory.

The second assignment complains of practically the same allegations under which the contention disposed of in the preceding assignment is made, and for the same reasons the second assignment is overruled.

[2] The third assignment is that "the court erred in refusing to permit the witnesses Fore and Wentz to testify as to the effect pasturing agricultural lands, when wet, would have upon the productive quality of the land during the following seasons." The rule is settled that a farmer is competent to

testify as an expert in many matters, and they have been heard with reference to the probable damage to prospective crops by firing and grazing agricultural lands. Ferguson v. Hubbell, 26 Hun (N. Y.) 250; Farmers', etc., Bank v. Woodell, 38 Or. 294, 61 Pac. 837, 65 Pac. 520; 2 Elliott on Ev. § 1061; Lawson on Expert and Opinion Evidence, pp. 18, 20. The last-named authority announced the broad rule that the opinions of farmers concerning the value of land, crops, stock, or services and the damage done thereto are admissible, and insists that matters peculiarly within the knowledge of farmers, and not such as may be classed as matters of common knowledge, should be heard from the mouths of witnesses competent to speak with reference thereto, because courts cannot assume that jurors were all farmers or that they were possessed of knowledge or experience upon the subject.

[3] In our opinion the extent of the damage done to agricultural lands by pasturing a number of cattle under the conditions contended for by appellant was a subject for expert testimony.

[4] The witnesses offered by appellee could not be heard as nonexperts, because they did not give the facts upon which their testimony was based; but whether we consider them as experts or not their competency is ordinarily a question for the trial court to determine. While it is settled as a matter of law what qualifications are requisite, the possession of those qualifications is equally well settled to be a question of fact, purely within the discretion of the judge before whom the witness is offered, and one case holds that his decision concerning the matter is not subject to be reviewed on appeal. Jones v. Tucker, 41 N. H. 547. There is considerable conflict of authority upon this question, but the better opinion sustained by the weight of authority seems to be that the action of the trial judge is not reviewable except in cases of a flagrant, palpable, and clear abuse of discretion. 2 Elliott on Evidence, § 1037; El Paso Railway Company v. Smith, 50 Tex. Civ. App. 10, 108 S. W. 988; Southwestern T. & T. Co. v. Evans, 54 Tex. Civ. App. 63, 116 S. W. 418. Reference to the statement of facts shows that it is extremely doubtful if either of the witnesses were qualified to testify as experts, and we hold that there is no such ground of complaint as would warrant us in sustaining this assignment.

The fourth assignment insists that the plaintiff's allegations that her land was under fence, and that defendant drove a herd of cattle through the fence and onto the land and herded and pastured them thereon, are not sustained by the evidence, and that the court should have peremptorily instructed the jury to find for appellant.

[5] The fifth assignment is based upon the refusal of the court to give the second special charge requested by the defendant, which is as follows: "If you find and believe from the evidence in this case that the plaintiff's land was inclosed within the lands belonging to another, and that the same at the time of the alleged trespass constituted a common inclosure, before the plaintiff would be entitled to recover, the burden would be upon her to show that she had a right to exclude the defendant from the other lands in said inclosure, and, as she has failed to show she had such right to exclude the defendant from other lands in such inclosure, she cannot complain that defendant's cattle wandered over her own lands, and under such circumstances, if you so find, you are charged that it was the duty of the plaintiff under the law to fence around on the lines of her own lands so as to exclude defendant's cattle from entering thereon." This requested charge is clearly upon the weight of the evidence, and is in effect a peremptory charge in appellant's favor, but since it is in line with appellant's contention under subsequent assignments the principle contended for therein will be hereafter discussed.

[6] The refusal to give the third special charge is the subject of the sixth assignment of error. The substance of this charge is that if the jury believed from the evidence that plaintiff's lands formed a common inclosure with the Astell lands, fenced together, and that the defendant purchased from Astell the right to pasture the Astell lands in said inclosure, then plaintiff cannot complain that defendant's cattle wandered over on her lands and grazed thereon; that under such circumstances it was her duty if she desired to exclude defendant's cattle to fence her lands so as to sever them from the lands of Astell. The written contract, above quoted, between Astell and Wentz, does not give Wentz or his assignee, the defendant herein, the right to pasture the Astell lands. It is simply a sale of the Kaffir corn and maize crops growing upon the Astell lands. Oral testimony was introduced upon the right of defendant under said contract, without objection, and to a certain extent is conflicting, but, when taken together with the written contract, we think the testimony clearly establishes the fact that appellant had no right to turn his cattle on the Astell place and pasture the fields. This being the case, the rule laid down in Creswell Ranch & Cattle Co., Ltd., v. Scoggins, 15 Tex. Civ. App. 373, 39 S. W. 612, does not apply. Indeed, we entertain serious doubts as to whether the rule announced with reference to pasturing lands held in common applies to agricultural lands which have been withdrawn from such common lands and devoted to agricultural purposes. However, since that question is only incidentally involved in the determination of this case, we do not pass upon it.

[7] There is a conflict of testimony as to whether or not the fence surrounding the lands of Astell and plaintiff was in such condition as to prevent defendant's cattle from trespassing, but there is sufficient evidence to sustain the contention that the fence was in good condition around the entire two tracts. In our judgment this inquiry becomes immaterial in view of the undisputed fact (testified to by several witnesses) that the cattle were driven through appellee's gate, were herded on the Astell part of the land until Wentz could remove feed which he had harvested from appellee's land, and that they were then turned loose to wander at will over the entire inclosure.

[8] It is further shown by W. E. Tandy that he purchased the right to pasture this particular stalk field as well as all of plaintiff's half section. This is not a case where one has acquired the right to pasture inclosed lands where the property of others is also inclosed therewith; and the rule which would require plaintiff, if she desired to protect her property from cattle rightfully upon the Astell land, to fence the same, does not apply. In the first place, the cattle were turned upon appellee's land under a claim of right and temporarily herded away from it, and then left to wander back. In this case appellant set up a specific claim to the right of pasturage upon appellee's land, basing that claim upon a purchase from her tenant, and we think the rule laid down in the cases of Durst v. Mann, 35 S. W. 949, Lyons v. Slaughter, 87 S. W. 182, and St. Louis Cattle Co. v. Vaught, 1 Tex. Civ. App. 388, 20 S. W. 855, should control the determination of the issue. In the last-named case it is said: "In this state, on account of the condition which has existed from time immemorial of the grazing lands, the owner of such property cannot complain as long as it remains a portion of the commons that the cattle of another should roam over it and graze upon it at will. This doctrine, however, does not authorize the owner of cattle by affirmative conduct on his part to appropriate the use of such lands to his own benefit. He will not be permitted thus to ignore the truth that every one is entitled to the exclusive enjoyment of his own property." Appellant, however, seeks to avoid the force of this rule by insisting that he purchased for a valuable consideration the right to pasture from appellee's tenant. Appellant's son testified that he knew McCurdy was the tenant of appellee; that he closed the deal with McCurdy about the 10th of January, 1910. He further testified that he knew McCurdy did not own the place, but had it rented for the year 1909, and that the crops were grown on the place during 1909, and that he was to have possession as soon as McCurdy could get his cattle away. The evidence supports appellee's contention that McCurdy's lease expired January 1, 1910, and that appellant had notice of that fact.

[9] While the law would give McCurdy the right of ingress to the premises for a reasonable time for the purpose of harvesting his crop, even though it had not matured before the expiration of the lease, the facts disclosed by this record do not bring the case under that rule. It appears that the maize and Kaffir corn had been headed and harvested, but had not been removed from the premises by the tenant prior to the time appellant purchased the stalk field, and it is probably true that McCurdy himself might have been authorized to enter the premises for the purpose of harvesting the stalk field after January 1, 1910, but in our opinion it cannot be successfully contended that he could transfer the right to another to drive cattle on the field to the damage of the owner of the field, and we have found no case extending the rule to such an unreasonable limit. In Mainwarring v. Templeman, 51 Tex. 213, it is said: "If the possession be sufficiently open and definite, whether it be in person or by tenant, it is incumbent on one who undertakes to acquire rights in the land to inform himself of the rights of the occupant or of the landlord of the occupant. The purchaser should not be excused from inquiry, unless there be something more to mislead him than his own assumption that parties occupy under the same right as formerly." The rule as announced by Justice Pleasants in American Cotton Company v. Phillips, 31 Tex. Civ. App. 79, 71 S. W. 321, is: Under the landlord and tenant statute, the doctrine of caveat emptor applies in all sales by the tenant of the crop grown upon the rented premises, and the purchaser of such crop takes no better title than his vendor at the time of the sale. It is our opinion that, under the law as it exists in this state, appellant cannot be heard to contend that he bought the stalk fields without notice that the lease had expired, and that the rights of the tenant McCurdy were correspondingly limited.

[10] Sayles' Civil Statutes, art. 3250, is: "If lands or tenements are rented by the landlord to any person or persons, such person or persons renting said lands or tenements shall not rent or lease said lands or tenements during the term of said lease to any other person without first obtaining the consent of the landlord, his agent or attorney." It has been held that this article prohibits the assignment of a lease without the consent of the landlord; and, if the transaction between McCurdy and appellant is held to be an assignment of the lease, it is prohibited by the article of the statute quoted.

The remaining assignments of error are either without merit or have been disposed of by what has been said above and are therefore overruled.

There being no reversible error in the record, the judgment is affirmed.