### TANDY v. ASTLE.

(Court of Civil Appeals of Texas. Amarillo. June 14, 1913.)

1. ANIMALS (§ 100*)—SUFFICIENCY OF EVIDENCE—INCLOSURE OF FIELD.

In an action to recover damages caused by cattle which the owner had turned into plaintiff's field, evidence as to the inclosure of the field *held* sufficient to justify a refusal of defendant's request for a directed verdict, because the field was part of a common inclosure in which the defendant had a right to pasture cattle.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 354–365, 380–385, 395, 397–401, 409–419; Dec. Dig. § 100.*]

2. ANIMALS (§ 100*) — SUFFICIENCY OF EVIDENCE—RIGHT OF PASTURAGE.

In an action for trespass by pasturing cattle upon plaintiff's field, evidence *held* insufficient to show that the defendant had acquired any right of pasturage, either from the plaintiff's tenant whose lease had expired prior to the time the cattle were driven into the field, or from one to whom plaintiff had sold the feed, but not the right of pasturage.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 354–365, 380–385, 395, 397–401, 409–419; Dec. Dig. § 100.*]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by William Astle against A. H. Tandy. Judgment for the plaintiff, and defendant appeals. Affirmed.

H. E. Hoover, of Canadian, for appellant. Crudgington & Works, of Amarillo, and Baker & Sanders, of Canadian, for appellee.

HUFF, C. J. The appellee, Wm. Astle, sued appellant, A. H. Tandy, for damages for trespass on appellee's land by the cattle of appellant. We adopt the statement of the issues as set out by appellant in his brief:

"The case was tried upon the plaintiff's third amended original petition, in which the plaintiff alleged in substance that on the 13th day of January, 1910, he was lawfully seised and possessed of section No. 222, block 43, and the south half of section No. 307, same block, situated in Ochiltree county, and had the same inclosed by a good and sufficient fence, and had standing thereon 200 acres of Kaffir corn, and maize stalks, and a number of growing trees; that on January 13, 1910, defendant, without plaintiff's consent, took possession of said premises,

and converted it to his own use and benefit, and drove a herd of cattle over and through the fence of plaintiff and herded and pastured them thereon until about the 3d of March, 1910; that the cattle roamed over said cultivated land, broke down the trees, and damaged the realty, and sued for actual damages in the sum of $2,120, and exemplary damages in the sum of $500, which, however, was abandoned before the case proceeded to final trial.

"The answer of the defendant consisted of a general denial and plea of not guilty; especially pleaded that the lands mentioned were not separated by a good and sufficient fence from other lands, but that said lands at all times were not segregated from the other lands, but constituted a part of the common inclosure of 10 sections, and that the plaintiff, if otherwise entitled to recover, was not entitled to exclude the defendant from said common inclosure. The defendant further pleaded that he had purchased the right to turn his cattle in said inclosure and to pasture the lands in controversy from one J. R. McCurdy; that McCurdy had for a long time been in possession of the premises, and had raised the crop thereon, and according to his custom for previous years sold to this defendant the right to turn his cattle therein. The defendant further pleaded that, the said McCurdy being in the possession of said place, prior to the defendant turning his cattle in said inclosure, the plaintiff, acting through those who represented him in the matter, sold the right of pasturage therein to one Dan Wentz; that Wentz sold the same to McCurdy, and McCurdy sold the same to the defendant for a valuable consideration, which the defendant paid; that Wentz purchased such right from the plaintiff and those who acted for him with the expressed understanding and agreement that the said Wentz and those who might purchase from him should have the right to sell such pasturage to the defendant, and that he, prior to the time of turning into said premises and inclosure, purchased said right, which should be passed to Wentz, etc. The defendant then set up the written contract entered into between Wentz and W. F. Shipp, attorney at law, representing the plaintiff, and stated that the same did not contain all of the terms of the contract, by either inadvertence, fraud, or mistake on the part of R. T. Correll, who drew the contract between Wentz and Shipp, and that it was fully understood and agreed that Wentz obtain the right of pasturage and the right to sell the same for others to pasture therein, and especially the defendant, and that Wentz thereby acquired the right not only to said pasture, but that it was agreed that he might sell and pass said right of pasturage to the defendant, including the right to turn his cattle in said pasture, and to graze upon said

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

fields and premises. The said pleadings set out fully the mistake and the true contract as it was intended, to which no exception was made or sustained."

The case was tried before a jury, and resulted in a verdict and judgment in favor of appellee against appellant for $118.80.

[1] The appellant, by his first assignment, complains of the action of the trial court in refusing to instruct the jury peremptorily to return a verdict for him, because appellee wholly failed to prove his lands were separated by a good and sufficient fence from other lands, and because the land was but a part of a common inclosure, and failed to show appellant had any right in said common inclosure, but did show he had a right therein, and further failed to show that appellant did not have other grass or water sufficient in said inclosure to sustain his cattle, or that appellant herded his cattle on the appellee's land. The court did not err in refusing to give the charge requested. It is admitted that appellee owned the land upon which the trespass is alleged to have been committed. It was segregated by a wire fence from other lands which appellant claimed he had the right to graze. There were inside of appellee's inclosure two half sections of land, one of which appellant claimed the right to pasture, belonging to Mrs. Fowler, which this court held, in the case of Tandy v. Fowler, 150 S. W. 481, did not have the right to do. The undisputed evidence is that appellant opened gates leading onto appellee's land and turned in about 800 head of cattle, and that he did so to get the benefit of the stalk fields on appellee's land, which he asserted he had the right to do. He sought to show that he had some seven or eight sections under a common fence with appellee; but the evidence in this case shows this land was segregated by a cross fence. The testimony further shows that from 200 to 400 acres of the appellee's land was in cultivation and segregated from his pasture lands by partition fences. The cross fence between appellee's land and the other sections claimed by appellant he sought to show was down, so the cattle could freely pass over the same. The evidence is to the effect that they were not so until after appellant turned his cattle in the fields. If the land was as appellant claims, he went to useless trouble to open the gates and drive his cattle in on appellee. If the lands were under a common inclosure, all he had to do was to turn them on the sections which he claims to have had leased. We think there can be no doubt but he turned his cattle in to get the benefit of the feed left over after the crop had been gathered by the tenant. We do not think the rule invoked by appellant applies to the facts of this case. The case of Tandy v. Fowler, supra, grew out of the same transaction, and is decisive of this case. This case turned on the question whether appellant had purchased the right under appellee's tenant and McCurdy to pasture the stalk field—that is the real question in the case, and not that appellant and appellee were holding their lands under a common inclosure.

We do not think the evidence raised the issue, and the court properly refused the requested instruction. This case is not one where cattle wandered, strayed, or broke into the inclosure of another because of an insufficient fence or no fence; but here the owner deliberately drove and turned them into the fields of his neighbor for the avowed purpose of getting the benefit of a winter pasture on the stalk fields, and for the benefit of the feed left in the fields. If he had no right, it was a trespass knowingly· and purposely committed. Claunch v. Osborn, 23 S. W. 937; Ohio Wool Growing Co. v. Bogel, 3 Willson, Civ. Cas. Ct. App. § 273; and Dignowitty v. Ballantyne, 3 Willson, Civ. Cas. Ct. App. § 194. For the reasons stated under the first assignment, we overrule the second assignment. The charge requested we do not regard as applicable to the facts of this case.

[2] The third, fourth, fifth, and sixth assignments of error complain of the action of the court in refusing the sixth special instruction, to the effect that if appellant bought the right to pasture from W. S. Shipp, representing the plaintiff in making the sale, and understood that the person to whom he sold might transfer the right of pasturage to the appellant, and he went into possession and pastured the land under the right so acquired, appellee was not entitled to recover in any sum. The fourth assignment of error is based on the charge as given, because the court told the jury appellant had no legal right to pasture the land, and for the reason the evidence showed that appellant procured the right to pasture the land from W. F. Shipp. The fifth assignment presents error in said charge, because the right to pasture was an issue under the evidence in the case, and the sixth assignment is that the court's charge is error, because appellant's right to pasture the land was an issue made by the evidence and should have been submitted to the jury.

The title to the land is admitted to be in appellee. It appears that one McCurdy was a tenant of appellee on the land, and that his lease expired December 31, 1909. The cattle were turned in on the land in January, 1910. There is no testimony that McCurdy had the right given by appellee to sublet the land or lease it for pasture privileges; on the contrary, both McCurdy and appellee testified he had no such right. McCurdy testified positively that he sold only to the 31st of December, 1909, and no further, and, as suggested above, he is not shown to have had any authority to sell from appellee. We think the facts substantially the same as in

the case of Tandy v. Fowler, supra, which grew out of the same transaction, and that appellant secured no right to the pasture from McCurdy, as the tenant of appellee.

One Mr. Wentz purchased the interest of appellee in the feed grown on the place by McCurdy, a tenant of appellee. This sale is evidenced by a written contract between Shipp and Wentz, executed by attorney Shipp, acting for appellee. The written contract does not give the right to pasture the land, but gave the right to remove the feed and other grain thereon. The contention is that through inadvertence, fraud, or mistake, one Correll, who drew the contract, and who at the time was a partner with Shipp, and who had as much right as did Shipp to represent appellee, left out the part of the contract giving the right to pasture the land. The facts we do not think show any fraud, mistake, or inadvertence on the part of Correll; but on the contrary, he told Wentz in buying the feed Wentz would have no right to pasture the land, that the feed was all that he bought. It appears Shipp, after the contract was drawn and signed, asserted to Wentz that under the contract, as drawn, Wentz could pasture the land. It may be remarked at this place the letters of Shipp to appellee at the time showed the right of pasturage was not sold, and that Wentz's contention was unfounded. Wentz did not request that the contract be corrected in accordance with his understanding; but after he knew it was drawn, conveying only the feed, he paid for the feed, and he did this after Correll told him the contract did not give the right of pasturage. Wentz says he was given the right to sell the pasture to Tandy or Fowler, but he sold to McCurdy, who as tenant of appellee, was then on the place. The contract does not give him the right to sell the pasture, and his right to sell is based on a statement of Shipp that, of course, he should do as he pleased with the feed on the place. In fact, we find no testimony that McCurdy purported to convey appellee's interest to the pasture on the land or any interest which Wentz said he sold McCurdy. On the contrary, McCurdy says he did not authorize Tandy to use the stalk fields after December 31, 1909, the time of the expiration of the lease. It is not shown that Shipp had the right to sell the pasturage; but, on the other hand, appellee testifies he did not authorize any one to give appellant permission to pasture the land. Under the written contract, appellant had no right to pasture the land. The evidence does not show fraud or mistake sufficient to correct the contract as contended for by appellant. McCurdy did not sell under Wentz's contract, and there is no testimony showing that he ever knew Wentz was claiming under the contract pasture privileges. McCurdy could not convey a greater term than he had—that is, to December 31,

1909—and, in fact, had no right to sublet. We do not think appellant showed any right to pasture appellee's land, and the court correctly refused the requested charge, and he correctly charged the jury that no such right was shown. The claim for exemplary damages was waived by appellee, and the only question submitted was as to actual damages. Appellee's right to his land being shown, and no right shown by appellant therein lawfully acquired, the appellee was entitled to recover the actual damages sustained by reason of the trespass.

We find no error, and affirm the case.